## United States District Court
## for the District of Columbia

| | |
|---|---|
| S.G., a minor, by and through his parents and next friends, Harwant Gill and Aleksandra Parpura-Gill<br>2907 Ellicott Street, N.W.<br>Washington, D.C. 20008<br><br>and<br><br>HARWANT GILL and ALEKSANDRA PARPURA-GILL<br>2907 Ellicott Street, N.W.<br>Washington, D.C. 20008,<br><br>Plaintiffs<br><br>v.<br><br>THE DISTRICT OF COLUMBIA,<br>a municipal corporation<br>John A. Wilson Building<br>1350 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004,<br><br>and<br><br>CLIFFORD B. JANEY, Superintendent<br>District of Columbia Public Schools<br>825 North Capitol Street, N.E., 9th Floor<br>Washington, D.C. 20002<br><br>Defendants | Civil Action No. |

### COMPLAINT
*(Declaratory judgment/injunctive relief/Enforcement of portion of hearing officer's determination/Appeal of or vacate portion of hearing officer's determination)*

This action is brought to enforce the rights of a minor disabled student who was denied his right to the free appropriate public education to which he is entitled pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"); its implementing regulations; and

the regulations of the District of Columbia Board of Education, 5 DCMR Chapter 30. The action seeks specific relief on account of the District of Columbia Public Schools' ("DCPS") failure to timely provide that education, and declaratory and injunctive relief to address the systemic failures which led DCPS to violate this individual's rights. Plaintiffs also challenge multiple erroneous rulings and actions by the hearing officer who presided at an administrative proceeding held pursuant to IDEA.

*Jurisdiction, venue and parties*

1. This Court has jurisdiction over the subject matter of this complaint pursuant to IDEA and its jurisdictional provisions, 20 U.S.C. §1415(i)(2), and 28 U.S.C. §1331.

2. Venue is proper in this Court, as all actions of which plaintiffs complain occurred in the District of Columbia and all claims made lie against the District of Columbia and/or its officers or agencies.

3. Plaintiff S.G. is a minor who resides in the District of Columbia with his parents at the address listed in the caption.

4. Plaintiffs Harwant Gill ("Dr. Gill") and Aleksandra Parpura-Gill ("Dr. Parpura-Gill") (collectively, "the Gills") are S.G.'s parents. They also reside in the District of Columbia at the address listed in the caption.

5. Defendant District of Columbia is a municipal corporation which, through its Board of Education, receives federal funds and consequently is subject to the provisions of IDEA.

6. Defendants Clifford B. Janey is the Superintendent of the District of Columbia Public Schools and as such is charged with operating DCPS, including that agency's compliance with all applicable laws. He is sued in his official capacity.

7. S.G. has been identified by both Montgomery County Public Schools ("MCPS") and DCPS as disabled and therefore eligible for special education within the meaning of IDEA.

*S.G.'s early special education experience*

8. At all relevant times until 2005, S.G. and the Gills resided in Montgomery County, Maryland. S.G. received special education and related services under MCPS auspices from his entry into preschool in the 2000-01 school year through the end of the 2004-05 school year pursuant to individualized education plans ("IEPs") developed annually by MCPS, as required by IDEA. From his entry into special education through the 2003-04 school year, all of S.G.'s IEPs placed him in special education 100% of the time; *i.e.*, his education took place completely away from his non-disabled peers. S.G. also received extended school year ("ESY") special education services during the summer following each school year. MCPS consistently provided ESY because each year it agreed that S.G. would have difficulty retaining his skills over the summer if they were not reinforced, that he was likely to regress without ESY services, and that the benefits he received from his school-year program would be significantly jeopardized if he were not provided ESY.

9. For the 2004-05 school year--S.G.'s last year in MCPS--S.G.'s IEP called for him to spend 80% of his time outside the general education classroom.

10. Because MCPS was not able to meet S.G.'s needs in his neighborhood school, he attended another elementary school which had a program capable of implementing his IEP. At that location, he was based in a special education classroom and left that setting only for the short periods of time in which he was scheduled for general education services.

11. During the 2004-05 school year, the Gills became concerned that the reduced level of special education service MCPS was providing to S.G. was insufficient to meet his needs, and that he might require a return to a full-time special education placement.

12. At the same time, Dr. Gill decided to fulfill a long-held desire to live closer to his office in downtown District of Columbia. Consequently, the Gills purchased a home in the District of Columbia, to which Dr. Gill moved in spring 2005. Dr. Parpura-Gill and S.G. remained in the family's Montgomery County home in order to allow S.G. to finish the school year without interruption; however, S.G. could have moved to the District of Columbia and immediately entered DCPS based upon his father's residence.

13. Because S.G. continued to attend MCPS, that school system convened an annual review for S.G. in March 2005. At that review, MCPS recommended that S.G. continue to receive special education services for the 2005-06 school year, as well ESY during the summer.

14. At the 2005 annual review meeting, Dr Parpura-Gill expressed to MCPS her concerns that S.G.'s 2004-05 program had been insufficient and that he might require a full-time special education placement. Because then-current MCPS policy did not permit a school-based IEP team to place a special education student in a separate school, the IEP team could not fully consider this issue. Instead, the IEP which emerged from that meeting continued

4

S.G.'s part-time placement in a special education classroom within a general education school, and provided that he would be outside the general education curriculum 73% of the time. The team, however, noted that if S.G. remained an MCPS student, he would be referred to MCPS's private school office, which considers the appropriateness of private, full-time special education services for children who may need them. The Gills did not pursue the matter further because they knew that S.G. would transfer to DCPS for the next school year.

*The Gills' first attempts to obtain special education services from DCPS*

15. Once Dr. Gill established District of Columbia residency–and knowing that S.G. would be attending DCPS in the fall–Dr. Gill and Dr. Parpura-Gill went to the public elementary school that serves their home, Murch Elementary School ("Murch"), to register S.G. for fall 2005. Registration is the first step in enrolling a student in DCPS, and is a necessary prerequisite to receiving any public educational services in the District of Columbia.

16. The Gills first visited Murch on April 29, 2005. They were told that DCPS does not register students before August and, furthermore, that nothing could be done that day because neither the principal nor the special education teacher was in the building. The Gills recognized that if DCPS waited until August to begin planning for S.G.'s arrival, it would not be able to provide appropriate special education for him when school started, especially given the suspected enhanced needs that were not reflected in the MCPS IEP. Accordingly, Dr. Parpura-Gill repeatedly attempted to persuade DCPS to review S.G.'s records and to begin planning for his arrival in August 2005. Her efforts included visits, telephone calls and other contacts with Murch on May 3, 2005, May 20, 2005, June 8, 2005 and June 10, 2005. In these contacts, she spoke at various times with Murch's secretary,

principal, school nurse and special education teacher, and briefly toured the building. As a result of these visits, Dr. Parpura-Gill became convinced that Murch would not be able to implement even the MCPS IEP that had been developed for S.G. in March 2005, much less the one she thought S.G. really needed, and expressed that belief to everyone who would listen to her.

17. During Dr. Parpura-Gill's May 20, 2005 visit to Murch, she gave the principal a copy of S.G.'s MCPS IEP. The principal told her that she did not know DCPS's policy regarding transfers of students with IEPs developed in other jurisdictions, and that she would have to obtain guidance from DCPS headquarters. The principal promised to contact Dr. Parpura-Gill with more information, but did not.

18. On June 10, 2006, the Gills' counsel wrote to Murch's principal to reiterate the Gills' concerns. DCPS did not respond to that letter. Coincidentally, Murch's special education teacher telephoned Dr. Parpura-Gill on June 10th. They spoke briefly about S.G.'s needs but the teacher did not pursue the matter further, saying that in cases like S.G.'s, the school awaits instructions from the central office.

*S.G.'s move to the District of Columbia*

19. Once the MCPS school year ended, S.G. and his mother joined Dr. Gill in their new District of Columbia home. Because they no longer resided in Montgomery County, S.G. was ineligible for the ESY services MCPS had recommended; because S.G. was still effectively unknown to DCPS, he could not attend a similar program in the District. He was therefore enrolled in the summer program at the Kingsbury Day School ("Kingsbury"), which provided the summer services recommended in his MCPS IEP.

20. No one from DCPS contacted the Gills to inform them of the procedures DCPS would follow to transfer S.G. from MCPS, or to alert them that fall registration had begun. The Gills, for their part, were consumed for most of the summer with moving and settling into their new home. On August 11, 2005, Dr. Parpura-Gill called Murch and learned that fall semester registration was at last under way. On August 22, 2005, promptly upon returning from the family's summer vacation, Dr. Parpura-Gill returned to Murch and finally registered S.G. She simultaneously asked DCPS to provide special education and related services for S.G., and again provided a copy of the IEP MCPS had developed for him for the 2005-06 school year.

21. The next day, August 23, 2005, Murch's special education teach called Dr. Parpura-Gill to invite her to an unspecified meeting to discuss S.G.'s needs. The meeting was in fact an IEP meeting, as to which IDEA requires advance written notice. That notice must, *inter alia,* inform the parents of the purpose of the meeting and who will attend it, and issue sufficiently before the meeting to ensure that the parents will have an opportunity to attend, with advisers of their choice. Murch did not prepare the required written notice until August 24, 2006, and the Gills did not receive it until after the scheduled starting time for the meeting.

22. When first called on August 23rd, Dr. Parpura-Gill agreed to attend a meeting at Murch on August 26, 2005 at 10 a.m, but then learned that individuals she wanted to bring with her could not appear at that date and time. On August 25, 2005, Dr. Parpura-Gill notified Murch that she could not attend the August 26th meeting, and requested written notice of the meeting, its purpose, the topics to be discussed and who would attend. She suggested September 2, 2005 as an alternative meeting date.

23. DCPS's 2005-06 school year commenced August 29, 2006. As of August 25, 2006, the only educational option DCPS was prepared to offer S.G. was placement in a regular education class at Murch. Upon information and belief, as of that date DCPS had not contacted MCPS to obtain S.G.'s records, as it was required to do under IDEA, and had no information about S.G. other than the records Dr. Parpura-Gill had brought to Murch. DCPS therefore had no legal choice except to provide a program comparable to the one specified in MCPS's IEP; however, Murch was unable to implement that IEP.

24. Because Murch did not respond to Dr. Parpura-Gill's August 25th communication, on August 26, 2006, the Gills' counsel wrote to Murch to inform them that it appeared that DCPS's many delays and missteps in processing S.G.'s admission meant that it could not offer him a free appropriate public education at the start of school, as it was legally required to do. The Gills therefore notified Murch that S.G. would remain at Kingsbury, but that they still wanted DCPS to provide special education for him and to be involved in developing his program. They therefore asked Murch to reschedule the IEP meeting, with adequate notice.

25. Notwithstanding the Gills' decision to enroll S.G. at Kingsbury at the start of the school year, they could have moved him to a public school program as soon as DCPS made an appropriate one available.

26. Murch's principal responded to the August 26, 2005 letter with a voice mail message on September 5, 2005–Labor Day–saying that she wished to discuss the issues in that letter. Despite three follow-up telephone calls to the principal, no further discussions took place. Instead, on September 20, 2005 she informed counsel that the matter had been turned over

to DCPS's Office of the General Counsel, which would be handling the matter. The principal expressed surprise that there had been no follow-up, and said she would call the Office of the General Counsel about S.G. There was no further communication from DCPS to discuss S.G. or to develop a program for him. Instead, without notice to the Gills, DCPS removed S.G. from the ranks of enrolled students because he did not appear for classes at Murch.

*Due process proceedings*

27. On October 25, 2005, the Gills submitted a request for a due process hearing in which they sought, *inter alia*, an order directing DCPS to immediately begin the process of determining S.G.'s eligibility for special education, and then to develop a program for him and propose an appropriate placement. The Gills also asked for interim relief in the form of funding at Kingsbury and a declaration that it constituted his current educational placement until a legally permissible change occurred.

28. The parties met on November 8, 2005 for the resolution meeting now required by IDEA 2004, but were unable to reach agreement. The matter was therefore scheduled for a hearing on January 26, 2006.

29. At the hearing, the hearing officer received the Gills' documentary exhibits into evidence without objection and received DCPS's exhibits over the Gills' objections. The Gills then moved for partial summary disposition, and DCPS cross-moved to dismiss the case. After argument, the hearing officer ruled that he would not decide either preliminary motion at that time and instead asked DCPS to present its case. DCPS did not have any witnesses available to testify and could not go forward.

30. The hearing officer then recessed the proceedings and enabled the parties to reach a partial settlement. They agreed that DCPS would commence the process of evaluating S.G. for special education, developing an IEP for him and proposing a placement, while he remained at Kingsbury. They further agreed that the hearing officer would issue an order embodying the settlement. Concerned that DCPS probably did not have an appropriate program or placement for S.G., the Gills reserved their right–should further litigation occur–to seek reimbursement for the costs associated with S.G.'s Kingsbury placement from the start of the 2005-06 school year. The Gills agreed that DCPS, in turn, was entitled to preserve any and all arguments it might have against payment of S.G.'s Kingsbury tuition and other related costs, to be raised in the same future proceedings, if any. DCPS did not object to the conditions the Gills placed upon the settlement. The Gills would not have agreed to settle the dispute had they not reserved this issue.

31. The hearing officer issued his written determination on February 1, 2006. The decision's preliminary information and factual recitations contain numerous factual errors and omissions. The order itself reflects the parties' agreement to continue the special education process for S.G. by ordering DCPS to convene an MDT/IEP team meeting, and adds deadlines–not discussed by the parties–for completing S.G.'s IEP and proposing a placement for him. The order also directed DCPS to consider the Gills' placement options in deciding on an appropriate educational placement for S.G. Nevertheless, the hearing officer ruled that the Gills were not prevailing parties. The order was silent as to the Gills' reservation of their rights with respect to retroactive funding for Kingsbury. A copy of the determination is attached hereto as Exhibit A.

32. Because of the errors and omissions, the Gills asked the hearing officer to clarify his decision. On April 27, 2006, the hearing officer issued an amended decision in which he corrected some of his errors but perpetuated and compounded others and made new mistakes. Specifically, notwithstanding the failure to hear any testimony or to entertain legal arguments on the substantive issues, the hearing officer found that DCPS had not failed to provide a free appropriate public education for S.G. and therefore that the Gills had no right to pursue reimbursement of the cost of his Kingsbury placement. Although not couched as an alternative holding, the hearing officer separately seemed to hold that the settlement had waived the Gills' right to seek relief for any DCPS actions prior to the date of the settlement, notwithstanding the Gills' reservation of that issue for further litigation without objection by DCPS. In most other respects, the hearing officer maintained the findings, conclusions and rulings of the February 1, 2006 decision. A copy of the second determination is attached as Exhibit B.

*Post-hearing proceedings*

33. Promptly following the due process hearing, Dr. Parpura-Gill re-registered S.G. at Murch as a non-attending student. Despite DCPS's adamant insistence on January 26, 2006 that as a student attending private school, S.G.'s registration and application at Murch had been ineffective because he did not come into the system through a separate office designated as the registration site for private school students, it accepted without question S.G.'s re-registration at his neighborhood school, adding only the word "non-attending" to a set of papers nearly identical to those Dr. Parpura-Gill had completed on August 22, 2005.

34. When DCPS convened the required IEP meeting, it agreed that S.G.'s needs were greater than were reflected on his MCPS IEP, and that he required a full-time special education

11

setting, as the Gills had long advocated. DCPS further agreed that Murch could not have provided appropriate special education for S.G.

35. Nevertheless, DCPS complied with neither IDEA nor with significant portions of the hearing officer's determinations. It never obtained S.G.'s file from MCPS, as required by IDEA. It did not complete S.G.'s IEP on time and did not propose a placement by the deadline set by the determinations. DCPS was also unable to complete S.G.'s IEP within the time it would have allowed itself had the Gills followed DCPS's summer 2005 timetable for registration and enrollment. DCPS further refused to consider the Gills' placement option and instead forwarded an incomplete IEP to its site review committee to select S.G.'s placement. The site review committee does not include members of the IEP team (parents in particular are excluded). Not surprisingly, the site review committee limited its placement consideration to Prospect Learning Center ("Prospect"), DCPS's full-time special education school for students with some of S.G.'s disabling conditions, and proposed it for S.G. Prospect, however, cannot implement the IEP that DCPS developed for S.G.

36. On May 12, 2006, DCPS convened a meeting to announce that it was proposing to place S.G. at Prospect. At the meeting, DCPS realized that it had forwarded an incomplete IEP to the site review committee. Despite this, DCPS informed the Gills that the matter would not be returned to the site review committee for further consideration because the committee would not change its decision even when presented with a different IEP.

37. The IEP DCPS developed does not address all of S.G.'s needs, contains no provision for ESY, did not issue on time and emerged without consideration of the Gills' suggested

placement. Accordingly, it satisfies neither IDEA's requirements nor those imposed by the hearing officer.

38. Because DCPS neither met the deadlines imposed by the hearing officer nor requested additional time within which to do so, the Gills have asked DCPS for tuition reimbursement for at least the time period between the expiration of the deadline set by the hearing officer and the date on which DCPS finally proposed Prospect. DCPS has indicated that it would consider providing compensatory education, but has taken no further action.

39. The Gills have exhausted all available administrative remedies. Even if they should return for a second administrative hearing to challenge the recently proposed IEP and placement, the April 27, 2006 hearing officer's determination unduly restricts the issues that could be presented at that hearing, making any attempt to exhaust futile unless and until the permissible scope of that hearing is defined by this Court.

### COUNT ONE
*(Declaratory judgment)*

40. Plaintiffs incorporate the allegations in ¶¶1-39 of the complaint as if fully set forth.

41. DCPS is required by IDEA to establish procedures that allow it to identify children with disabilities who are in need of special education and related services in order to provide the free appropriate public education to which they are entitled.

42. IDEA also requires DCPS to have an IEP in effect at the start of the school year for each disabled student within its jurisdiction.

43. In the case of a disabled student with an IEP who transfers school districts, DCPS is separately obligated to provide a free appropriate public education, including services comparable to those described in the previously held IEP, until such time as it develops an appropriate new IEP.

44. Upon information and belief, DCPS does not have policies or procedures that are reasonably calculated to allow it to fulfill this triple mandate. DCPS will not consider the special education needs of a transferring student until that student is formally registered and enrolled in DCPS; however, it will not allow that student to register or enroll until the student leaves the transferor school district, even if the contemplated enrollment is for a future time when the child will be attending DCPS and not the transferor school. In the case of student like S.G., who reasonably remains in the transferor school district through the end of the school year but who requires extensive planning to ready an appropriate program and placement for the next school year, DCPS's policies do not allow sufficient time for an effective transition, virtually guaranteeing that the student will not receive a free appropriate public education at the start of the school year. S.G.'s experiences demonstrate that DCPS cannot provide a free appropriate public education for an entering special education student in the time it allows itself under current policies.

45. DCPS's policies regulating the admission of students who transfer school districts in situations like S.G.'s violate IDEA.

46. Plaintiffs request entry of a judgment declaring that the referenced DCPS policies and practices violate IDEA.

## COUNT TWO
### *(Injunction)*

47. Plaintiffs incorporate the allegations in ¶¶1-45 of the complaint as if fully set forth.

48. DCPS's failure to adopt policies or procedures to identify and provide special education for disabled students who transfer from other school districts inevitably causes DCPS to violate IDEA and to default in its obligations to those students.

49. There is no adequate remedy at law for the ongoing problems caused by the illegal policies and practices described in Count One.

50. Plaintiffs therefore request issuance of an injunction directing DCPS to reform its registration, admission and enrollment practices to prevent IDEA violations such those which as occurred in S.G.'s case.

## COUNT THREE
### *(Enforcement of portions of hearing officer's determinations)*

51. Plaintiffs incorporate the allegations in ¶¶1-39 of the complaint as if fully set forth.

52. DCPS failed to comply with the hearing officer's determinations and consequently did not develop a timely or appropriate IEP for S.G., such that it has not offered him the free appropriate public education to which he is entitled by IDEA and by the determinations.

53. The Gills have provided the required appropriate education themselves, at great cost.

54. The Gills are entitled to entry of an order recognizing that (a) DCPS has not provided a timely, free appropriate public education for S.G.; (b) Kingsbury is the appropriate educational placement for S.G., unless and until DCPS proposes a different appropriate program and placement; and (c) the Gills should be reimbursed by the District for the tuition and other expenses they have incurred in providing S.G.'s education.

55. Alternatively, S.G. is entitled to compensatory services from DCPS to make up for deficiencies in the program and placement offered to him to date.

## COUNT FOUR
*(Appeal/vacate portions of hearing officer's determinations)*

56. Plaintiffs incorporate the allegations in ¶¶1-39 of the complaint as if fully set forth.

57. The hearing officer erred in (a) ruling that the Gills did not prevail at the due process hearing and (b) barring the Gills from seeking further relief in the form of reimbursement of the costs associated with S.G.'s Kingsbury placement for the entire 2005-06 school year, contrary to the agreement reached when the parties settled some of their issues at the January 26, 2006 due process hearing.

58. These portions of the hearing officer's determinations were rendered in violation of the Gills' due process rights, in that the hearing officer reached his decision without hearing evidence; made factual findings that were not supported by the evidence and were, in some cases, wholly speculative; made other findings that were against the weight of the evidence

16

that was in front of him; ruled without affording the Gills opportunity to present their legal arguments; and made legal determinations unsupported by the governing law.

59. The Gills are entitled to an order vacating the applicable portions of the hearing officer's determinations and either (a) entering judgment in favor of the Gills on the challenged issues or (b) remanding this case for further administrative proceedings consistent with the record and the Court's rulings.

**Wherefore,** based upon the foregoing, the Gills demand judgment against defendants the District of Columbia and Clifford B. Janey, Superintendent, jointly and severally, as follows:

A. Entry of a judgment declaring the District of Columbia Public Schools' policies and procedures with respect to child find, registration, enrollment and admission of special education students who transfer school districts violate IDEA;

B. Entry of an injunction directing DCPS to develop policies and procedures that conform to the requirements of IDEA with respect to child find, registration, enrollment and admission of special education students who transfer school districts;

C. Entry of a judgment finding DCPS's IEP and proposed placement inappropriate and declaring Kingsbury Day School both an appropriate educational placement for S.G. and his current educational placement, within the meaning of IDEA, until such time as DCPS proposes a different appropriate program and placement and that proposal is sustained through applicable procedures;

D. Entry of a judgment in an amount sufficient to fully reimburse plaintiffs for all costs incurred in providing a free appropriate public education for minor plaintiff S.G. until such time

as DCPS proposes a different appropriate program and placement and that proposal is sustained through applicable procedures;

E.    Entry of a judgment vacating the portions of the February 1, 2006 and April 27, 2006 hearing officer's determinations that (a) found that the Gills were not prevailing parties and (b) barred the Gills from seeking retroactive placement and funding at Kingsbury from the start of the 2005-06 school year;

F.    Entry of a judgment awarding the Gills reimbursement of the costs of providing a free appropriate public education for S.G. from the start of the 2005-06 school year or, alternatively, remanding this issue for further appropriate administrative proceedings;

G.    An award of pre- and post-judgment interest on all sums awarded, at the highest legal rate available;

H.    An award of the costs of this action, including reasonable attorney's fees; and

I.    Such other and further relief as the Court deems just and proper.

_/s/ Diana M. Savit_
Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20814
(301) 951-9191
Attorneys for plaintiffs