United States District Court
for the District of Columbia

| |  |
|---|---|
| **S.G., a minor,** *et al.*,<br><br>**Plaintiffs**<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA,** *et al.*,<br><br>**Defendant**s | **Civil Action No. 06-01317 (RMC)** |

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants the District of Columbia and Clifford B. Janey, Superintendent of Schools of the District of Columbia (collectively, "defendants" or "the District") have moved the Court to dismiss plaintiffs' complaint on grounds of lack of jurisdiction; specifically, plaintiffs' alleged failure to exhaust their administrative remedies. Defendants' motion mischaracterizes some of the allegations in the complaint and ignores issues that are ripe for judicial review **even if** defendants are correct that some of plaintiffs' claims should first be submitted for administrative proceedings. More important, assumptions and arguments made in defendants' motion illustrate the very reasons why plaintiffs came first to this Court before invoking whatever administrative due process obligations they may have. For these reasons, defendants' motion should be denied.

### BACKGROUND

Plaintiffs S.G., a minor, and Harwant Gill and Aleksandra Parpura-Gill, his parents (collectively, "plaintiffs" or "the Gills"), filed this action to both enforce and vacate various portions of a February 1, 2006 hearing officer's determination (later amended on April 27, 2006). Both determinations involved a disabled student's rights under the Individuals with Disabilities with

Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA") and its implementing regulations, and were issued pursuant to the procedural rights section of that statute, 20 U.S.C. §1415. The allegations in the complaint and its accompanying exhibits which are relevant to the pending motion are set forth below.

S.G. is a disabled student who for many years received special education and related services pursuant to IDEA from the Montgomery County, Maryland Public Schools ("MCPS"), where he and his parents resided until they moved into the District of Columbia in 2005. The Gills purchased their home in the District in early 2005, and Dr. Gill moved in immediately. S.G. and Dr. Parpura-Gill remained in Montgomery County through the end of the 2004-05 school year to avoid disrupting S.G.'s education.

The Gills pursued further educational planning for S.G. on two tracks. In spring 2005, they participated with MCPS in developing S.G.'s individualized education program ("IEP") for the 2005-06 school year.[1] They also approached the neighborhood school for their new District of Columbia home to initiate planning for S.G.'s entry into the District of Columbia Public Schools ("DCPS") in fall 2005. They wanted DCPS to start planning early to ensure that an appropriate special education program was ready for S.G. on the first day of school. They were also concerned that the 2005-06 IEP developed by MCPS probably was insufficient, and they wanted an opportunity to review it with DCPS and make appropriate changes before the new school year started.[2]

---

[1] Under IDEA, every special education student must start the school year with an IEP, which is deemed appropriate if it charts a course capable of delivering a free appropriate public education ("FAPE") for that student. *See* 20 U.S.C. §1414(d).

[2] Under IDEA, a student with an IEP who transfers to a school district in another state is entitled to receive a FAPE comparable to that set forth in the IEP he brings with him until the new local education agency makes any changes that are deemed appropriate. *See* 20 U.S.C. §1414(d)(2)(C)(i)(II).

The Gills approached DCPS repeatedly during the second half of the spring 2005 semester, asking to register S.G. for the fall and providing information about his educational needs, including copies of his MCPS IEP. Staff at S.G.'s neighborhood school, Murch Elementary School ("Murch") consistently refused to register S.G. or to otherwise commence planning for his fall 2005 arrival, saying students may register for school only in August and that the procedures for serving new DCPS students who already have IEPs from other jurisdictions were unknown. The Gills finally successfully registered S.G. at Murch on August 22, 2005. He was placed in a regular education classroom with no special education services. DCPS then informally invited the Gills to attend a planning meeting for S.G. on August 26, 2005, the last business day before school opened on August 29, 2005. The Gills did not receive the legally required written notice of the purpose of the meeting until after its scheduled starting time, and were unable on short notice to arrange to bring to the proposed meeting all of the professionals they wanted to include. The Gills therefore asked DCPS to postpone the meeting to a later date. DCPS did not respond to that request.

During the summer of 2005, S.G. participated in the summer program at The Kingsbury Day School, a private special education school in the District. He did not have a public summer school option with either MCPS or DCPS, even though the MCPS IEP found him eligible for extended school year services and recommended a summer special education program on that basis, due to his move from one school district to another. Because the Gills' first-hand review of the Murch program during spring 2005 led them to conclude that Murch could not fulfill the MCPS IEP and certainly could not provide the more intensive program they believed S.G. needed, the Gills kept S.G. at Kingsbury when the 2005-06 school year started while they awaited further DCPS action. None occurred. Instead, they later learned that without notifying them, DCPS discharged S.G. for failure to attend when he did not appear at Murch during the first few weeks of school, even though DCPS

was fully aware of the reasons why S.G. was not attending Murch, and that his parents were still requesting services for him from DCPS.

On October 25, 2005, the Gills requested an administrative due process hearing to challenge DCPS's failure to provide a free appropriate public education ("FAPE") for S.G. commencing with the start of the 2005-06 school year. They sought, *inter alia,* an order directing DCPS to immediately begin the process of determining S.G.'s eligibility for special education, and then to develop a program for him and to propose an appropriate placement. The Gills also asked for interim relief in the form of funding at Kingsbury and a declaration that it constituted his current educational placement until a legally permissible change occurred.[3]

The parties appeared on January 26, 2006 for a due process hearing on the Gills' claims. At the start of the hearing, the presiding officer received both parties' exhibits into evidence and then heard extensive argument on competing preliminary dispositive motions. Instead of ruling on the motions or hearing testimony, the hearing officer then brokered a settlement pursuant to which DCPS agreed to commence the process of evaluating S.G. for special education, developing an IEP for him and proposing a placement, while he remained at Kingsbury. The Gills specifically reserved the right to seek reimbursement for S.G.'s Kingsbury tuition and related services from the start of the 2005-06 school following completion of the evaluation, program development and placement process if further proceedings ensued and if they deemed that relief warranted. The parties further agreed that the hearing officer would issue an order embodying the settlement.

---

[3] *See* 20 U.S.C. §1415(b) and (j).

The contemplated hearing officer's determination issued February 1, 2006 (Exhibit A to the complaint). The hearing officer noted that the settlement meant that the Gills' request for relief had been granted, ordered DCPS to proceed with all necessary steps to develop an appropriate special education program for S.G., and set deadlines for complying with the terms he set forth. Nevertheless, he ruled that the Gills had not prevailed on their due process request. The determination and order were silent as to the Gills' reservation of their right to pursue reimbursement for S.G.'s Kingsbury tuition and related services from the start of the 2005-06 school year.

Concerned that this bare-bones order could be read as cutting off their right to seek the full funding they wished to pursue, the Gills asked the hearing officer to clarify his determination and to memorialize all aspects of their settlement with DCPS. In response, on April 27, 2006 the hearing officer issued an amended decision and order (Exhibit B) in which he stated (based on no evidence) that S.G. had remained at Kingsbury at the start of the 2005-06 school year **because** he had attended Kingsbury's summer program, that S.G. had never been properly registered with DCPS, and that DCPS had not denied S.G. a FAPE. The hearing officer further amended his order by removing the holding that the Gills' request for relief was granted, stating instead merely that "counsel entered into a settlement agreement." He gave DCPS the same amount of time as before to complete the eligibility, program development and placement process,[4] and again omitted any reference to the Gills' reservation of their rights regarding tuition reimbursement.

---

[4] We note that the District now argues that this effectively restarted the clock for completing this process (*see* memorandum in support of defendants' motion to dismiss the complaint, p. 4, n.3) and that it therefore timely complied with the hearing officer's determination. Whether the hearing officer had authority to amend his order in this fashion when no one had sought reconsideration of this portion of his order is a separate issue for this Court. Plaintiffs did not specifically raise this issue in their complaint because they were unaware when they filed that the District read the amended determination in this fashion. Now that the District has stated its position, it has flagged an additional problem with the determination under review.

In the meantime, DCPS assembled relevant information concerning S.G. and concluded that the Gills were right about his special education needs: DCPS found S.G. eligible for special education, agreed that he needed a full-time, separate learning environment entirely removed from his non-disabled peers, and agreed that Murch could not implement a proper program for him. The Gills and DCPS parted company with respect to some aspects of the program DCPS proposed, and also as to the site at which DCPS planned to deliver S.G.'s services: on May 12, 2006, DCPS proposed to place S.G. at Prospect Learning Center ("Prospect"), a full-time public special education school, while the Gills were skeptical about Prospect's appropriateness for S.G. and advocated for placement at Kingsbury.

It therefore became necessary for the Gills to challenge the disputed IEP decisions pursuant to 20 U.S.C. §1415. Normally, the first step in such a challenge is to request a due process hearing. 20 U.S.C. §1415(f). The Gills would argue, at such a hearing, that not only did DCPS fail to develop an appropriate program, it unduly delayed in beginning the process of considering S.G.'s special education needs and that accordingly they had acted properly in placing him at Kingsbury for the 2005-06 school year. They would, therefore, request reimbursement for the tuition and related services they provided from the beginning of that school year; *i.e.*, from August 29, 2005 forward. Due, however, to the effect of the hearing officer's unsupported factual findings, his conclusions that DCPS did not fail to provide a FAPE for S.G. and that he had not been properly registered with DCPS when school started in fall 2005, and as well as the hearing officer's failure to memorialize all aspects of the settlement reached on January 26, 2006, the Gills were concerned that the February 1, 2006 determination and the April 27, 2006 amended determination could be interposed to bar them from raising these issues. Accordingly, the Gills filed suit to overturn these aspects of the hearing officer's determination, because they must be addressed before any decision can fashion an

appropriate remedy for S.G. in the event the Gills prevail on their argument that DCPS did not develop an appropriate program and placement for S.G.

In this action, the Gills also challenge other portions of the hearing officer's determination, including his finding that they were not prevailing parties in their first administrative due process request, and his apparently spontaneous decision to give DCPS extra time to fulfill its obligations pursuant to the February 1, 2006 determination when asked to clarify unrelated aspects of that decision. The complaint they filed also includes their challenge to DCPS's post-hearing actions, because those actions are so intertwined with the determinations under review that it is difficult to separate them.

Defendants now argue that plaintiffs' complaint should be dismissed in its entirety–even the claims to vacate portions of the hearing officer's determination–because, they contend, DCPS's post-hearing actions must first be presented for an administrative hearing. As we show below, the District's motion has no merit and must either be denied, or at minimum, the exhaustion issue should be deferred until the ground rules for the suggested administrative hearing have been set by this Court.

## ARGUMENT

The gravamen of the District's motion rests upon several faulty premises. First, the District posits that the only issue before the Court is the appropriateness of the IEP DCPS developed for S.G. and the placement it proposed for him following the first due process hearing, and that this issue must first be submitted for administrative review. Second, the District argues that because the amended hearing officer's determination of April 27, 2006 *sua sponte* gave DCPS extra time to meet its special education obligations to S.G., the Gills cannot complain that DCPS missed deadlines.

Finally, the District claims that the Gills' exclusive remedy for any missed-deadline claim they may have lies with the special master procedure established by this Court's decision in *Blackman v. District of Columbia,* 185 F.R.D. 4 (D.D.C. 1999).

If the appropriateness of DCPS's post-hearing actions were the only matters to be addressed, and if the proceedings regarding those actions were subject only to ordinary rules of evidence, the Gills would agree that an administrative due process hearing is the required next step. Before that hearing can take place, however, the undue limitations on what can be heard or argued that were created by the hearing officer's erroneous rulings must be eliminated. Indeed, the District's arguments in support of its motion to dismiss illustrate and emphasize the harm the hearing officer did in making factual findings and legal conclusions in a case that settled before any evidence was introduced. For these reasons, this case must go forward.

### I.     **Plaintiffs have already exhausted their administrative remedies as to the hearing officer's errors**

The hearing officer's determination, as amended, was denominated a final administrative decision, appealable to a court of competent jurisdiction. The District does not, and cannot, argue that the Gills must return for further administrative processing of any claimed errors in what the hearing officer has already done and declared finished. *See* 20 U.S.C. §1415(i)(2)(A) (party aggrieved by the findings and/or decision rendered in a due process hearing may bring a civil action); 34 C.F.R. §§300.507-512 (same); 5 D.C.M.R. §3029-3031. As indicated, the Gills were aggrieved by the hearing officer's final action in as least the following respects: (a) his determination that they were not prevailing parties; (b) his factual finding that S.G. remained at Kingsbury for the 2005-06 school year **because** he attended Kingsbury's summer program (and, implicitly, for no other reason); (c) his finding that DCPS did not deny S.G. a FAPE at the start of the 2005-06 school year; (d) his

failure to memorialize all aspects of the parties' January 26, 2006 settlement, to the Gills' likely detriment in pursuing their remedies in future proceedings; and (e) his apparent *sua sponte* decision to grant DCPS an extension of time to complete its work when no extension had been requested.[5]

Regardless of the Court's decision with respect to the immediate justiciability of any other portion of the Gills' complaint, they are entitled to press these claims in court now. They have no further administrative remedies to exhaust on these points. At minimum, therefore, the complaint cannot be dismissed, and the Gills may go forward on these issues.

## II.    The *Blackman* enforcement procedures do not apply here

Defendants separately argue that to the extent the Gills have a claim to enforce the hearing officer's determination with respect to the deadlines imposed upon DCPS to complete S.G.'s special education processing, their exclusive remedy is to file a motion in the *Blackman* case and obtain an order of reference to the *Blackman* special master. DCPS misreads the decision upon which it relies.

The *Blackman* special master was appointed to assist the Court in resolving individual claims for relief brought by various members of the *Blackman* class on motions for preliminary injunction. Following the Court's finding in *Blackman* that DCPS routinely violates IDEA by substantially delayed compliance or outright noncompliance with its IDEA procedural obligations and with hearing officer determinations, the Court was inundated with motions for preliminary injunction by class members who continued to experience delays and/or noncompliance and were at risk to suffer

---

[5] As indicated *supra,* n. 3, this issue arises from the District's argument in its motion to dismiss that it did not violate the deadlines set by the hearing officer because DCPS proposed a special education placement for S.G. 15 days after the amended determination issued. DCPS's action was timely only if the April 27th amended determination restarted the clock. DCPS's placement notice was untimely with respect to the deadlines set by the original February 1st determination.

irreparable harm as a result. The Court found itself forced, on an emergency basis, to wade through extensive records and then to fashion appropriate relief. The Court therefore appointed a special master, whose sole responsibility was to assist the Court in resolving requests for immediate injunctive relief. *See Blackman v. District of Columbia, supra,* 185 F.R.D. at 5-8.

No such request is presented here. Although S.G. is aggrieved by DCPS's actions and inactions to date, he is not at immediate risk because his parents are providing the education and services he needs. The issues in this case are about reimbursement for money already spent and prospective improvement of DCPS's offerings. While a prompt resolution is greatly to be desired, this is not an emergency in the preliminary injunction sense, and no motion to that effect has been filed.

### III. Plaintiffs are not required to exhaust their administrative remedies because the available remedies are inadequate

As the District notes, IDEA plaintiffs are ordinarily required to exhaust their administrative remedies and, as indicated earlier, if we were concerned exclusively with DCPS's post-hearing actions, the Gills would have been at the administrative table a long time ago. This case, however, is not so simple: The errors which emerged from the first due process hearing have the ability to control a future one, and to prevent the Gills from obtaining all relief to which they may otherwise be entitled. Thus, resort to the administrative process is inadequate, and they are not required to exhaust.

IDEA typically limits federal court actions to those cases in which the administrative process has not resolved the appealing party's concerns. *Cox v. Jenkins,* 878 F.2$^d$ 414 (D.C. Cir. 1989). The exhaustion doctrine serves the important purposes of allowing the agency to apply its own expertise

and exercise its discretion and giving the agency an opportunity to correct its own errors; it ensures that the court has a complete factual record to review; it prevents the parties from flouting the required administrative process; and it conserves judicial resources. *Committee of Blind Vendors of the District of Columbia v. District of Columbia,* 28 F.3$^d$ 130 (D.C. Cir. 1994); *Cox v. Jenkins, supra.* Parents may, however, bypass the administrative process where exhaustion would be futile or inadequate. *Cox v. Jenkins, supra.* This is a recognized exception to the general rule that exhaustion of administrative remedies is a predicate to judicial review. *Randolph-Sheppard Vendors of America v. Weinberger,* 795 F.2$^d$ 90 (D.C. Cir. 1986).

Resort to the administrative process is futile if the agency almost certainly will deny relief because it has a preconceived position on the matter, or if it lacks jurisdiction to consider it. *Id.* The administrative process is inadequate where the agency might be able to act, but cannot provide complete relief. *Id.* Inadequacy of the administrative remedy is found where all of the potential methods available to the agency to right the claimed violation still will not fully remedy it. *Id.*

Thanks to the first hearing officer's determination–which the Gills believe could be deemed *res judicata* in any subsequent proceedings–the next hearing officer is likely to be unable to award them all of the relief they seek even if they prevail. At a hearing to challenge DCPS's post-hearing actions, the Gills would argue that S.G.'s IEP should be amended to include additional services, that he should be placed at Kingsbury prospectively, and that they should be reimbursed for the cost of providing an appropriate special education for him from the start of the 2005-06 school year because the record will show, they believe, both that DCPS erred in failing to plan for S.G.'s enrollment before the school year started and that its eventual efforts were untimely, inadequate and inappropriate. *See Burlington School Committee v. Department of Education,* 471 U.S. 359 (1985) (tuition reimbursement is available remedy upon finding that public school system did not offer

FAPE to student). If they are forced to go forward on the current record–including the erroneous findings and conclusions of the first hearing officer–they will be limited to relief for the period beginning April 27, 2006, the date the amended determination issued. They will, effectively, be barred from obtaining relief for most of the 2005-06 school year, even if they are entitled to it on the record and consistent with applicable law.

For this reason, the administrative remedy currently available to the Gills is inadequate, and they should not be required to exhaust it.

### IV. The Court should first resolve issues arising from the February 1, 2006 hearing officer's determination and its April 27, 2006 amendment

Assuming, *arguendo,* that the Court is inclined to send the parties to an administrative due process hearing on the issues arising from DCPS's post-hearing actions, that referral should await resolution of the Gills' challenges to the first hearing officer's determination and amended determination. The reason is that, as we discussed *supra,* the erroneous rulings by the first hearing officer have the potential to skew and disrupt the appropriate presentation of evidence and the issues to be adjudicated–and thus the ultimate rulings–in any future hearing. At most, therefore, the Court should first proceed to decide those matters as to which no exhaustion could be required, reserving the remaining issues for appropriate later proceedings.

## **CONCLUSION**

For all the foregoing reasons, plaintiffs respectfully submit that defendants' motion to dismiss the complaint should be denied.

/s/ *Diana M. Savit*

Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20814
(301) 951-9191
Attorneys for plaintiffs