IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.G., a minor, *et al*., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-1317 (RMC) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.,* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

The Defendants, by counsel, reply herewith to the "Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint," filed October 24, 2006 ("Opposition").

**PRELIMINARY STATEMENT**

As noted in the Defendants' October 10, 2006, Motion to Dismiss ("Motion"), the Complaint set out two bases for this action: (1) that a May, 2006, Individualized Education Program ("IEP"), and a resultant placement of the student, were inappropriate in a variety of respects, and (2) that the February 1, 2006, Decision and Order, and the April 27, 2006, Amended Decision and Order (collectively, "the Decisions"), somehow denied the Plaintiffs an opportunity to argue in the future that they should be reimbursed for private school tuition for the entire 2005-2006 school year. Motion, p. 4., Complaint p. 16.

As to the first, the Defendants showed that the Plaintiffs had failed to exhaust administrative processes prescribed by the Individuals with Disabilities Education

Improvement Act of 2004, 20 U.S.C. §1400 et seq. ("IDEIA"). Motion, pp. 5-6. As to the latter, the Defendants pointed out that the Plaintiffs' fundamental concern was that the Decisions had somehow foreclosed their later seeking tuition reimbursement for times other than those governed by the Decisions, and was at best premature. Motion, pp. 6-7.

The Opposition appears to contend that the Plaintiffs are excused from any exhaustion-of-administrative-remedies requirement with respect to the May, 2006, IEP and placement because the administrative process for challenging those DCPS actions is "inadequate." Opposition, pp. 10-12. As to the Decisions themselves, the Plaintiffs seem to argue that they have already exhausted their administrative remedies with respect to the Hearing Officer's "errors," and that the Court can properly review decisional statements even though the administrative decisions appealed from *granted* the Plaintiffs' requested relief. Opposition, pp. 8-9. For the reasons set forth below, the Defendants submit that the Plaintiffs' arguments are without merit.

## ARGUMENT

**I. The Opposition Fails to Establish Jurisdiction to Review, at This Time, the May, 2006, IEP and Placement.**

To the extent the Complaint seeks to challenge the May, 2006, IEP and placement, the Defendants argued that available administrative procedures for challenging those matters had not been utilized by the Plaintiffs, and that dismissal of all aspects of the Complaint devoted to those matters was required. Motion, pp. 5-6. There is no question that IDEIA establishes administrative procedures for challenging IEPs and placement determinations, and that the Plaintiffs have not employed those procedures. There is no question that IDEIA provides for Court review of adverse administrative decisions issued at the conclusion of the statutory procedures. There is no question that

2

exhaustion of the administrative process established by IDEA is a quid pro quo for this Court's jurisdiction. E.g., D.L. v. District of Columbia, 2006 U.S. Dist. LEXIS 59945 *15 (D.D.C. 2006); Cox v. Jenkins, 878 F.2d 414, 418-419. (D.C. Cir. 1989); Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 102 (D.C. Cir. 1986). And the Opposition itself acknowledges that "plaintiffs are ordinarily required to exhaust their administrative remedies" with respect to IEPs and related placement decisions. Opposition, p. 10.

However, as to the May, 2006, IEP and placement here, the Plaintiffs contend that, in light of the Decisions, "resort to the administrative process is inadequate, and [the Plaintiffs] are not required to exhaust." Opposition, p. 10.  In the Plaintiffs' view, before the prescribed hearing process can occur, "the undue limitations on what can be heard or argued that were created by the Hearing officer's erroneous rulings must be eliminated." Opposition, p. 8.

It should be emphasized that the Plaintiffs do *not* contend that they are unable to raise, or present evidence concerning, any issues with respect to the May IEP itself. Neither do they contend that they are somehow barred from challenging DCPS' placement of the student, or presenting any evidence in that regard.  Rather, distilled of all hyperbole, the Opposition contends that the Plaintiffs' interest in requesting *private school tuition reimbursement for a prior time period* may be inhibited in some fashion by the Decisions.  Thus, the Opposition speculates that at a hearing challenging the IEP and placement,

> . . . the Gills would argue that S.G. IEP should be amended to include additional services, that he should be placed at Kingsbury prospectively, and that they should be reimbursed for the cost of providing an appropriate special education for him from the start of the 2005-06 school year.

3

Opposition, p. 11.  Yet by virtue of the Decisions, it is said, the Plaintiffs would be "barred from obtaining relief" with respect to *the last issue*. Opposition, p. 12.

Plaintiffs' litigating choice to include other matters in an administrative challenge to the May, 2006, IEP and placement, should they choose to do so, does not bootstrap the Plaintiffs past the exhaustion requirement.  Moreover, there is nothing in the Decisions that would bar inclusion of such a claim in an administrative complaint directed to the IEP or placement in any event.  What the Plaintiffs request here is that, even before they file any administrative complaint directed to such matters, even before there is some administrative action interfering with their presenting evidence and making whatever arguments in that regard they may have in mind, and even before some adverse administrative decision on the positions/relief the Plaintiffs may take/request occurs, this Court should rule that their pursuit of non-IEP, non-placement issues has been rendered futile, and/or that the administrative process for challenging the May IEP and placement is inadequate.

The Plaintiffs' have failed utterly to support that extraordinary, speculative basis for invoking the claimed exemption(s) from the exhaustion requirement.[1]  Nor have they offered any defensible justification for this Court's effectively prescribing the scope of some future administrative proceeding directed to content of IEPs and placements not the subject of the Decisions appealed from.  Until such time as available administrative

---

[1] When seeking to be excused from exhausting administrative remedies, the plaintiff bears the burden of showing futility or inadequacy.  Spencer v. District of Columbia, 416 F. Supp. 2d 5 (D.D.C. 2006) citing Moss v. Smith, 794 F. Supp. 11, 13 (D.D.C. 1992). "[I]n this Circuit, the 'futile or inadequate' standard is difficult to meet." D.L. v. District of Columbia, 2006 U.S. Dist. LEXIS 59945 *12 (D.D.C. 2006), *citing* Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 106 (D.C. Cir. 1986) ("The rule is that the exhaustion requirement may be waived in only the most exceptional circumstances.") (citations omitted). Id.

4

procedures have been employed by the Plaintiffs with respect to the May, 2006, IEP and placement, and they are, in the words of the statute, aggrieved by an adverse decision, this Court is without jurisdiction to consider such matters. Accordingly, any claims concerning the post-Decisions actions referred to in the Complaint must be dismissed.[2]

## II.     The Plaintiffs Have Failed to Establish the Jurisdictional Basis for Review of the Decisions Involved.

Jurisdiction to entertain the complaint herein is governed by 20 U.S.C. §1415(i)(2)(A), which provides, in relevant part:

> Any party aggrieved by the findings and decision made [by a Hearing Officer after a due process hearing] . . . shall have the right to bring a civil action . . . , which action may be brought in any . . . district court of the United States without regard to the amount in controversy.

The requirement for "aggrievement" tracks the well-settled principle in civil litigation that a party cannot appeal from a district court judgment unless "aggrieved" by it. E.g., Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 333-34 (1980). Stated otherwise, "[a] party may not appeal from a judgment or decree in his favor . . . ." Id. at 335 (quoting Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939)). Cf. also,

---

[2] To the extent the Complaint suggested a claim that the May, 2006, IEP did not "meet the deadlines imposed by the hearing officer" (Complaint, para. 38; see also id., para. 52), the Motion pointed out that complaints concerning untimely compliance with HODs were properly raised in the Blackman proceedings, in which long-standing procedures for considering such claims exist. Motion, p. 4. The Opposition, however, asserts that resort to that procedure is not necessary here, since the Plaintiffs here are not seeking "immediate injunctive relief." Opposition, p. 10.

   In fact, the Blackman procedures provide for virtually any kind of appropriate relief based on a failure of timely compliance with HODs or settlement agreements, not simply emergency injunctions or directives that untimely IEPs or placements be accomplished. Moreover, if the Plaintiffs here are not pursuing relief based on untimeliness of the May IEP and placement – and it now appears they are not – then a consideration here of the asserted deficiencies of the May IEP/placement is even more clearly barred.

   With respect to substance of the Plaintiffs' suggestions of untimeliness, such contentions are both wrong and disingenuous. The Amended Decision provided for an IEP meeting within 30 days of its April 27, 2006, issue date, and the IEP was arrived at within that time period. If the Plaintiffs are contending that the IEP was untimely because it was not within 30 days of the February 1, 2006, Decision – the implementation of which was interdicted and tolled by the Plaintiffs' March 20, 2006 request for "clarification" – then the Plaintiffs' Complaint herein, filed later than 90 days following the February 1, 2006, Decision, is similarly untimely.

e.g., White v. McGuirl, 1995 U.S. App. LEXIS 1505, *1 (D.C. Cir. May 18, 1995)(per curiam)(only a "person aggrieved" by a judgment has the right of appeal); Spencer v. Casavilla, 44 F.3d 74, 78 (2d Cir. 1994); Hartman v. Duffey, 305 U.S. App. D.C. 256, 19 F.3d 1459, 1465 (1994) (quoting Deposit Guaranty, supra); In the matter of Earl Sims, Jr., 994 F.2d 210, 241 5th Cir. 1993); United States v. Accra Pac, Inc., 173 F.3d 630, 632 (7th Cir. 1999).

Here, "the case was settled on the record." *See* Complaint Exhibit A, "Introduction" and Complaint Exhibit B, "Summary of Relevant Evidence." Pursuant to that settlement – at the request of the parties – the Hearing Officer ordered that an MDT/IEP meeting to be convened within 30 days should "review all current evaluations, review and revise the student's IEP as warranted and discuss and determine an appropriate educational placement including the parent's placement options." Complaint Exhibit A, p. 5 and Complaint Exhibit B, p. 5. To the extent the relief granted was what the parties, including the Plaintiffs, had agreed to and sought – and since the required meeting and placement have indeed occurred – the Plaintiffs cannot be deemed a "party aggrieved" entitled to seek court review under IDEIA. As in Collins v. District of Columbia, Civ. No. 02-1344 (D.D.C. March 19, 2003), since the Decisions "granted relief in plaintiffs' favor, . . . plaintiffs thus are not aggrieved by the [Decisions] and may not seek review of [them] in this Court." Slip op. at 5.

There is no doubt that what the Plaintiffs here claim to be aggrieved by is not the relief ordered by the Decisions, but by other wording in the Decisions which, it is contended, may prevent their arguing in the future that they should be granted tuition

6

reimbursement for part of the 2005-2006 school year. E.g., Opposition, pp. 11-12. As explained in Collins v. District of Columbia, supra, however,

> . . . the federal courts do not exist to review the reasoning, statements, or language of administrative decisions, but rather to review the judgments and orders contained in those decisions. It is beyond peradventure "that federal appellate courts review decisions, judgments, orders, and decrees – not opinions, factual findings, reasoning, or explanations. In re Williams, 156 F.3d 86, 90 (1st Cir. 1998); accord McDonnell Douglas Corp. v. NASA, No. 95-5290, 1996 U.S. App. LEXIS 30513 at *1 (D.C. Cir. Sept. 17, 1996) (party "lacks standing to challenge the judgment of the district court" where it "prevailed in the proceeding before the district court and on appeal challenged only the legal reasoning of the district court'); Accra Pac, 173 F.3d at 632 ("[A] litigant may not appeal from unfavorable statements in a judicial opinion, if the judgment was favorable."); Bolte v. Home Ins. Co., 744 F.2d 572, 572-73 (7th Cir. 1984). That proposition applies as well to judicial review of administrative decisions:
>> A court of appeals reviews judgments, not opinions. Someone who seeks an alteration in the language of the opinion but not the judgment may not appeal; likewise if the document is an administrative decision rather than a judicial one.
>
> Accra Pac, 173 F.3d at 632. . . .

Slip op. at 6. So here, the Plaintiffs having been granted the relief both parties had agreed to and sought, challenges to other portions of the Decisions are not appropriate for review by this Court.

Even as to those other portions of the Decisions about which the Plaintiffs complain, the Opposition itself makes clear that the future prejudice feared by the Plaintiffs is far from certain to occur. Thus, the Opposition states that the Plaintiffs are "concerned that the February 1, 2006, determination and the April 27, 2006 amended determination *could be* interposed to bar them from raising these issues." Opposition, p. 6 (emphasis added). The Decisions, the Plaintiffs believe, "*could be deemed* res judicata in any subsequent proceedings – the next hearing officer is *likely to be unable to award* them all of the relief they seek even if they prevail;" the Decisions "*have the potential* to

7

skew and disrupt the appropriate presentation of evidence in the post hearing actions." Opposition, pp. 11, 12 (emphasis added).

But at this point, the Plaintiffs have put none of these concerns to the test. They have not – as they may – filed an administrative complaint seeking tuition reimbursement, and there has been no action, favorable or negative, by any Hearing Officer. Of course, it is not clear exactly what evidence or arguments would be presented by the Plaintiffs or what DCPS' response would be, much less what a Hearing Officer's ultimate conclusion might be (and on what factual or legal basis). But all such matters can and should be first considered at the administrative level. And only if such matters were decided adversely to the Plaintiffs would there be a specific decision, based on specifically stated reasons, properly available for court review.

Instead, what the Court is presented with here is a plea that it look past the relief requested by and granted to the Plaintiffs in the Decisions, and that it "reverse" other wording in those rulings, based on speculative concerns about what effect such other Decisions wording may have on future administrative proceedings the Plaintiffs may or may not initiate. With all respect, the Defendants believe that such action would simply be a form of advisory opinion that this Article III Court is without authority to take.

## **CONCLUSION**

The Opposition fails to show that the Plaintiffs are exempt from the failure-to-exhaust-administrative-remedies requirement with respect to the May, 2006, IEP and placement. Neither have the Plaintiffs demonstrated that their speculative concerns concerning the effect of non-ordering wording in the Decisions on a subject matter other than the propriety of the IEP and placement – reimbursement for prior private school

tuition – renders the administrative process for challenging the IEP and placement either futile or inadequate.  Finally, it is clear that the Plaintiffs are not "parties aggrieved" vis-à-vis the Decisions, and that this Court is without jurisdiction to review non-ordering wording in the Decisions, in order to provide gratuitous guidance for the conduct of future administrative proceedings the Plaintiffs may (or may not) choose to initiate.

In ultimate practical terms, the Plaintiffs here contend that the Decisions did not accurately reflect the settlement agreement of the parties – the Plaintiffs say they "reserved" the issue of tuition reimbursement, but the Decisions did not properly reflect that "reservation" – and they seek the Court's endorsement of their view of the settlement terms.  To the extent the issue is one, in effect, of construing an oral agreement, the matter is particularly inappropriate for this Court's consideration, and is certainly not contemplated by IDEIA.  The Plaintiffs are able to pursue that matter, if they choose, before the Hearing Officer or, if they believe the "real" agreement is not being honored by DCPS, they are able to institute some form of contract action in Superior Court.  This Court, however, is not the proper forum for such matters.

Accordingly, for the reasons set forth herein and in the Motion herein, it is respectfully requested that the Complaint herein be dismissed.

                    Respectfully submitted,

                    ROBERT J. SPAGNOLETTI
                    Attorney General of the District of Columbia

                    GEORGE C. VALENTINE
                    Deputy Attorney General
                    Civil Litigation Division

        ***/s/ Edward P. Taptich***
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

***/s/ Amy Caspari***
Amy Caspari [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
email: amy.caspari@dc.gov

November 3, 2006