GOVERNMENT OF THE DISTRICT OF COLUMBIA

+ + + + +

DEPARTMENT OF PUBLIC SCHOOLS

+ + + + +

OFFICE OF STUDENT HEARINGS

+ + + + +

#===================

In the Matter of

S▓▓▓▓▓▓ G▓▓L

#===================

Washington, D.C.

Thursday,
January 26, 2006

The above-entitled matter came on

for hearing, pursuant to notice.

BEFORE:

CHARLES JONES, Hearing Officer

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

APPEARANCES:

On Behalf of the Student?Parent:

DIANA STAFFORD, ESQ.


On Behalf of D.C. Public Schools:

RHONDALYN PRIMES, ESQ.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
273
WASHINGTON, D.C. 20005-3701
(202) 234-4433                              (202) 234-4433

This transcript was produced from

an audio CD provided by D.C. Public Schools.

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.

274

(202) 234-4433                WASHINGTON, D.C.  20005-3701                (202) 234-4433

P R O C E E D I N G S

(11:00 a.m.)

HEARING OFFICER JONES:    Let's go on the record.

It is now 11 o'clock on January 26th, 2006.

My name is Charles Jones, and I'm a Hearing Officer and I'm convening an administrative due process hearing on behalf of S██████ G███.

This hearing is being conducted in accordance with the guidelines and rights established by IDEA, the rules of the Board of Education for the District of Columbia, and the D.C. Appropriations Act.

Now, for the purposes of the record, I'd like everyone to introduce themselves.  Counsel for DCPS?

MS. PRIMES:    Rhondalyn Primes, attorney-advisory, DCPS.

MS. STAFFORD:    Good morning.

Diana Stafford, attorney for S███████ G███
and his family.

MS. GILL:   Inet (phonetic) Gill.
I'm the mother of S███████ G███.

MS.   DAVIS:       Good   morning.
Michelle   Davis,   educational   control
(inaudible).

HEARING OFFICER JONES:  All right.
Will you waive the formal reading of the due
process rights?

MS. GILL: Yes, I will.

HEARING  OFFICER  JONES:   At  the
conclusion  of  this  hearing,  within  ten
calendar  days  or  within  the  45-day  limit,  I
will  prepare  an  order.   That  order  is
appealable by either party to a court of law.

Now, as relates to disclosures, I
have a disclosure document from DCPS dated
January 19th, and a disclosure document from
parents' counsel for the same date.

Do  either  of  the  legal  counsels

have any problems with the admissibility of the disclosure letters?

MS. PRIMES: The letters or the documents?

HEARING OFFICER JONES: Either.

MS. STAFFORD: Well, I'm going to reserve on the appropriateness of the witnesses, but as to the disclosure documents I don't have a problem with the admissibility of DCPS Exhibits 2 and 31.

Exhibit 1 are the notes of the resolution meeting that was held pursuant to IDEA, and I'm not sure for what purpose they were being offered.

I review the resolution meeting as akin to a settlement meeting with an intent to resolve the due process request without formal proceeding, and settlement negotiations are typically not admissible into evidence. If DCPS is offering the notes to show that the resolution meeting took

place because it's a prerequisite to having this hearing, I have no problem with that.

There are some facts in the resolution meeting notes that are probably also admissible.  There's, for example, an addendum.

HEARING OFFICER JONES:  So you're --

MS. STAFFORD:  But I'm not wholeheartedly accepting it, to cut to the chase.

HEARING OFFICER JONES:  Well, resolution meeting notes have been allowed into these matters as Congress has indicated that they wanted the parent and the school system to negotiate resolution.  So I have allowed resolution notes to be entered into the record.

So as relates to your objection to those, I'll overrule that.

Do you have any problems with

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
778
WASHINGTON, D.C.  20005-3701
(202) 234-4433                    (202) 234-4433

admissibility of her disclosure?

MS. PRIMES:  No, and I would just also note with respect to her objection to the resolution meeting notes there's nothing in the statute that states that the resolution sessions are confidential proceedings.

HEARING OFFICER JONES:  All right. Now, having said all of that, are there any preliminary matters?

MS. PRIMES:  Yes.

MS. STAFFORD:  One very brief one which has to do with today's schedule.  Then I'll defer to DCPS and then hope you'll come back to me.

We apparently received different scheduling notices.  The notice that I received indicated that the hearing was going to start at nine o'clock.

HEARING OFFICER JONES:  It was supposed to start at nine o'clock.

MS. STAFFORD: Right, and I lined up my witnesses accordingly. I understand that Ms. Primes was identified of a one o'clock start, and she lined up her witnesses accordingly, and so we decided to split the difference and start at 11.

I have been able to obviously arrange for two of my witnesses to be here and a third will arrive this afternoon. She was otherwise going to come this morning. The fourth witness was to testify by telephone. That's Patricia Capero. I have not actually made contact with her. I left a message.

I don't know that with the new schedule that we will be able to get her testimony today even if we have time for it, and so because of the mix-up, I would ask that if we finish with everything else and we've not been able to get Dr. Capero's testimony, that we find a way to get it at

another time.

HEARING OFFICER JONES: All right. Two things. Now, I was late. So that caused the hearing to be pulled back, but I did come. In the future, always show up at the allotted time and allow me to make the decision about what goes where.

MS. PRIMES: And I understand that, and I take responsibility for that because --

HEARING OFFICER JONES: You're the culprit.

MS. PRIMES: Yes. I received an interim order that had a time of one o'clock, and unfortunately I notified my witnesses one o'clock.

HEARING OFFICER JONES: Oh, okay.

MS. PRIMES: Now, I had a conversation with Ms. Savit yesterday in the student hearing office with one of their assistants, who of course is not a Hearing

Officer, and she indicated to me -- she didn't seem to think that it would pose a problem as long as we agreed to do it at 11.

But I certainly understand the Hearing Officer's concern and will be cognizant of that in the future.

HEARING OFFICER JONES: All right, Ms. Primes. Thank you.

So we'll try to take care of this. Now, any other preliminary matters?

MS. STAFFORD: Well, I have filed a motion for partial disposition, and I don't know if Ms. Primes has anything else to raise also, whether we should take that first or --

MS. PRIMES: Well, we do have at this time -- as a preliminary matter we'd like to make a motion to dismiss this case. First and foremost, the allegations that's made in the hearing request is a failure to timely register this student. There is nothing under IDEA that warrants this as

being a violation.

Furthermore, a child registering at a school is the parent's responsibility, not necessarily something that DCPS actually does. They assist with the registration, but it's not their responsibility. So it's not a violation under IDEA, and there's no remedy, and furthermore, there's no remedy under IDEA for a failure to timely register even if there were a violation.

If it was a violation of failure to timely register, we have to consider the fact that this is a student that was residing in Maryland, and it's specifically articulated in the hearing request and in parent's disclosure. She sends a letter to the school indicating that even as late as June 10th of 2005, the child was still residing in Maryland.

Now, you and I and I believe counsel knows that DCPS is only required to

provide a free, appropriate, public education for students who are residing in the District. And there is specifically case law at <u>Strong v. District of Columbia</u>, which reiterates this.

It is clear under the express language of IDEA, it is clear that Congress did not intend for one state to bear the cost of specialized education for special needs children residing in another state.

Furthermore, the District's policies, which were incorporated into its public school state plan under the IDEA provided that a student must reside in the District to receive the special educational benefit from the District's public school system.

So with that being said, DCPS had no obligation to this student who was not residing in the District at the time that the parent first approached DCPS in April of 2005

to register the student in school.

HEARING OFFICER JONES:  So you're asking that I do what?

MS. PRIMES:  I'm asking that you dismiss this matter for failure to state a claim upon which relief can be granted because the violation, the failure to register is not a violation under IDEA, and even if it were, there's not  -- a remedy for such a violation.

HEARING OFFICER JONES:  Okay. Counsel for the parent.

MS. STAFFORD:  Well, the due process complaint speaks at some length about Dr. Gill's attempt to register, but the failure to register is not the claimed IDEA violation.  The failure to register is symptomatic of the fact that DCPS refused all efforts to become familiar with S███████ in time to have a program in place for him for the start of the current school year.

There is no allegation and there was no request that DCPS begin to provide services for S███████ while he still resided in Montgomery County.

By way of background --

HEARING OFFICER JONES:  Yeah, I've read the complaint.

MS. STAFFORD:  Okay, all right.

HEARING OFFICER JONES:  Did you finally register the student?

MS. STAFFORD:  Yes, he was registered in August.

HEARING OFFICER JONES:  Wait just a minute, Ms. Primes.  I'll let you talk.

MS. PRIMES:  Okay.

HEARING OFFICER JONES:  All right. He was registered in August.

MS. STAFFORD:  Correct.

HEARING OFFICER JONES:  August what?

MS. STAFFORD:  August 22nd.

HEARING OFFICER JONES: Twenty-seventh or --

MS. STAFFORD: Twenty-second.

HEARING OFFICER JONES: Twenty-second. All right, and after you registered him on August 22nd, 2005, when did he begin to attend school?

MS. STAFFORD: He began school the following week to start --

HEARING OFFICER JONES: What school did he go to?

MS. STAFFORD: He entered Kingsbury Day School, and the reason --

HEARING OFFICER JONES: When did he enter DCPS?

MS. STAFFORD: He --

HEARING OFFICER JONES: Did he ever?

MS. STAFFORD: He never attended a class at DCPS. The reason for that was that due to parental concern that there might not

be an appropriate program for S▉▉▉▉▉, they had obtained a place for him at Kingsbury, but they were continuing to pursue special education through DCPS.    He had been in public school in Montgomery County in the hope that there would be a program for him and that they could decline the Kingsbury enrollment.

What happened then was that he was finally registered on August 22nd.   The next day Dr. Gill received a telephone call from a special educator at Merch Elementary School inviting her to a meeting to discuss Sebastian, and she was asked to come in Friday, the 26th, which was the last business day before school started.

She was not told what would happen at the meeting other than that S▉▉▉▉▉ would be discussed.    She was not given written notice.

Written notice was sent to her,

and that is both an exhibit of DCPS and an exhibit of ours, but it was actually not received until after the meeting was to have started.

            HEARING OFFICER JONES:  So let me make sure I understand.  I see you waving your arm.  I will allow you to talk --

            MS. PRIMES:  Okay.

            HEARING OFFICER JONES:    -- Ms. Primes.

            MS. PRIMES:  Okay.

            HEARING OFFICER JONES:  Let me get some clarity --

            MS. PRIMES:  Okay.

            HEARING OFFICER JONES:  -- first.

            MS. PRIMES:  Okay.

            HEARING OFFICER JONES:  Thank you.

            MS. PRIMES:  You're welcome.

            HEARING OFFICER JONES:  All right. Let me ask you the questions.

            So the student was registered.

MS. STAFFORD:  Correct.

HEARING OFFICER JONES:  But there was a decision or a determination made by the parents that DCPS was not an appropriate placement for the student?

MS. STAFFORD:  It was a decision at that time that the only decision by the parents was that they had no idea what DCPS was going to offer.

HEARING OFFICER JONES:  But did they give them a chance to offer anything?

MS. STAFFORD:  Well, that's the whole point.  They tried to give them a chance.

HEARING OFFICER JONES:  Okay.

MS. STAFFORD:  And what I've cited in my own motion, and this dovetails somewhat with Ms. Primes' motion, is that DCPS did not adopt policies that effectively prevent it from carrying out its IDEA obligations.

HEARING OFFICER JONES:     What

occurs in a transfer from a jurisdiction into a DCPS, if the student has an IAP, which I gather your student has, you submit that IAP to the school.

      MS. STAFFORD:  It was submitted.

      HEARING OFFICER JONES:  And the school has the responsibility for implementing it.  You've got to allow them the time to implement the IAP.  You can't summarily, without giving the school an opportunity to implement, move forward, which to mean means you've not allowed DCPS jurisdiction.  You, in essence, took the student and made a determination prior to allowing DCPS the opportunity to implement that IAP.

      MS. STAFFORD:  Well --

      HEARING OFFICER JONES:  Now, let me just continue on.

      Ms. Primes, you keep waving your arms.  What is it you want to say?

MS. PRIMES:    I mean, I was just going to say what you -- the conclusion that the Hearing Officer made, but also state that as soon as he became -- as soon as we were notified that this child was, in fact, residing in the District, as counsel has indicated, the next day we phoned the parent and we also sent them a letter of invitation inviting them to a meeting to begin to figure out a way to service this student for the '05-'06 school year.

We received a letter from the parent the next day --

HEARING OFFICER JONES:    What day was that?

MS. PRIMES:    I believe it was August 25th, because we sent out a letter of invitation on August 24th, and it was actually signed by the parent saying --

HEARING OFFICER JONES:    A letter of invitation for what?

MS. PRIMES:    A  letter  of invitation for a meeting.

HEARING OFFICER JONES:  Oh.

MS. PRIMES:  I'm sorry.  I retract that.    I  believe  that's  my  client's signature.

PARTICIPANT:  It is.

MS. PRIMES:    So  we  had  a confirmation of meeting notice which was to be scheduled for August 26th, and it's dated August 24th, and as counsel has stated, one of the special education coordinators at Merch contacted the parent actually on the 23rd of August, as soon as the next day after the child enrolled, to schedule a meeting to discuss the matter with the student.

They --

HEARING OFFICER JONES:  All right. What I'm going to do is --

MS. PRIMES:  I didn't finish.

HEARING OFFICER JONES:  I know.  I

know.    I'm sorry I interrupted you, but I want to have something on the record.

MS. PRIMES:    Oh, I thought we were.

HEARING OFFICER JONES:    I'm going to reserve my decision on both of your motions.    I'd like to hear some testimony.

Who would be your first witness?

MS. PRIMES:    Well, first and foremost, let me just back track a second here.    With respect to our motion, I just want to complete my thought on it before we proceed.

You're right.    Part of our motion to dismiss as well is that they didn't give us an opportunity to provide the child with a free and appropriate public education.    And even when they filed the due process hearing complaint, which was October 25th of 2005, the 120-day period hadn't even started.

And, furthermore, we got a letter

from counsel on August 26th, four days after the child registered, notifying us that the child wasn't going to go to our school, that the child was going to go to Kingsbury.

So, in essence, they didn't give us an opportunity to provide faith. So they really don't have a basis on which to obtain a remedy because they didn't give us proper time to even provide the child with faith, and in this instance we've made several attempts.

HEARING OFFICER JONES:    What letter is it that you received you're --

MS. PRIMES:  That letter is --

MS. STAFFORD:  Now I'll wave my hand.

MS. PRIMES:    -- Parents Exhibit 21, and on the second page.

HEARING OFFICER JONES:  All right. Counsel for the parent, what is it you have to say?

MS. STAFFORD: All right. Well, let me respond to the second point first. The letter that went in, in addition to giving the entire history of the effort to get DCPS to start addressing ███████ needs and to plan for him, said he will be enrolled in Kingsbury because of concern that Merch is not going to be able to meet his needs.

He was in a largely self-contained program in Montgomery County, the LAB Program. By the first week in August -- excuse me -- by the last week in August, the Gills knew enough to know that Merch probably could not offer the program he had had in Montgomery County. That was one of the reasons that they wanted to get the process started much earlier, because he probably was not going to be able to go to the neighborhood school.

So out of concern that he would

not be properly educated at Merch, if he went in there and then they first started to tinker with the program, they put him in Kingsbury where they knew his needs could be met.

And when you hear the evidence, what you'll hear is that regardless of the timing, the way he would have started at Merch would not have been consistent with his MCPS IAP nor consistent with an appropriate education for him; and, therefore, that the Gills made a prudent decision not to start him in what would have been an inappropriate program.

But the other thing I do want to address is the issue of the 120-day period. That has to do with a child who is suspected of being disabled. DCPS gets an opportunity to assess the child, to make an eligibility determination, to develop an IAP, and then proposed a placement, and they get 120 days

to do that.

S████████ was way farther down that line. He had been determined by another jurisdiction to be disabled. He had an IAP, and under the IDEA until DCPS had some basis for changing that IAP, they were to start with the Montgomery County IAP.

So it's not correct to say that he should have been put in the school and given us the 120-days when the due process request was filed, within that 120-day time period.

You will also note that in the very same letter that has been cited to you, the letter of August 26th, DCPS was not only notified that S████████ was going to start at Kingsbury, but that the Gills were still interested in special education through Montgomery County. It was a request to reconvene a meeting both in the August 26th letter and in Dr. Gill's August 25th letter.

She offered September 2nd as a

meeting date, said, "I want to keep going with the process. I want you to continue planning."

You will hear from Kingsbury that they could have withdrawn S█████ at any time at no financial penalty as long as a substitute student was available to take his place, and they have a waiting list.

And there was no response from DCPS to that. He was not withheld --

HEARING OFFICER JONES:  Is the student registered with DCPS at the present time?

MS. STAFFORD:  At the present time he is not. As I understand, that --

HEARING OFFICER JONES:  One of the conditions to this whole process is that the student be registered as a non-attending student.

MS. PRIMES:  He's not registered as a non-attending student.

MS. STAFFORD:  Oh, I'm sorry.  I'm sorry.  I misspoke.

MS. GILL:  He is registered as a non-attending.  I registered him first and then I came back to the hearing.  They told me to exchange (speaking from an unmiked location).  The registration was changed to a non-attending.  So he is registered.

HEARING OFFICER JONES:  He is registered as a non-attending student at the present time?

MS. GILL:  Yes.

MS. PRIMES:  As of what date?

MS. GILL:  Let me see if I have that.

MS. PRIMES:  And I would also note that --

HEARING OFFICER JONES:  Wait just a minute.  Wait just a minute because --

MS. GILL:  I've got to think of (unintelligible) from the office.  Either it

was -- I don't have it.  I'm thinking that
it's 8/26, but I don't -- I can't -- I don't
have something for now.

I'm sorry.  I don't have it, but I
didn't --

HEARING OFFICER JONES:  You don't
know the date?

MS. GILL:  No.  It was following
my letter, my letter.  So it was changed, I
guess, internally, and I --

HEARING OFFICER JONES:  All right.
Wait just a minute.

Ms. Primes, what were you going to
say?  Have you checked to determine if he has
been registered as --

MS. PRIMES:  When I checked, he
was not registered as a non-attending
student.

HEARING OFFICER JONES:  And when
did you check?

MS. PRIMES:  And when did you

check?

MS. PRIMES: But he has been enrolled. He was enrolled in Merch, and that's why the staff at Merch started the process.

HEARING OFFICER JONES: I understand that. That was in August, but when did you take the determine --

MS. PRIMES: When I received the complaint. That would have been when I actually filed my response, which was in November some time.

HEARING OFFICER JONES: That's critical because if he's not enrolled or registered as a non-attending student, that means there's significant different legal obligations that DCPS has.

Well, what I'd like to do if it's all right for you legal counsel, I'd like DCPS to -- I'm not going to rule on either of your motions, your motion for partial

summary, nor your motion to dismiss. I'd like to hear from you with regard to some testimony on what steps were taken by DCPS to respond to this parents' request to enter into the system.

MS. PRIMES: Okay, and I have no problem doing that, but with all due response, Hearing Officer, she's conceded that the child was not residing in the District at the time that she initially tried to register him in D.C. Public School. They're conceding that.

And I guess I'm unclear as to what we're proceeding on if it has already been conceded that he wasn't residing in the District, and if he wasn't residing in the District in April of 2005 --

HEARING OFFICER JONES: Are you suggesting that their complaint --

MS. PRIMES: -- our only notice --

HEARING OFFICER JONES: -- her

complaint is bound by that?   Is that what

you're saying, that her complaint is bound by

that date?

Because she did indicate that they

did finally move in, didn't you?  Are you a

resident of the --

MS. GILL:   Yes, I am.   They are

all now registered.   When I first started to

register my husband was a resident.

HEARING OFFICER JONES:   All right.

Well, let your counsel speak, okay?

MS.  STAFFORD:    No.   What  I'm

saying is that the bulk of their complaint is

that we failed to -- DCPS failed to timely

register when they initially attempted to

register in April of 2005.

We didn't register because he

wasn't residing in the District of Columbia,

which by law DCPS is only required to provide

related services to students residing --

HEARING OFFICER JONES:   Let's look

at the complaint.  Where do you --

MS. STAFFORD:   That's the first page -- I mean page 3 of the complaint.

HEARING OFFICER JONES:   All right. Wait just a minute.

MS. STAFFORD:   So in Paragraph 1, it specifically states the allegations that are being mae, and those allegations, and those allegations are failure to timely register the student, and our response to that or the basis of my motion to dismiss is there wasn't a failure.

First of all, failing to timely register is not an IDEA violation, which is what I said initially, but even if it were, this student didn't begin residing in the District until the summer of 2005.  DCPS wasn't made aware of the student until August 22nd of 2005, meaning made aware that he was residing in the District, until August 22nd of 2005.

The next day, as counsel has stated, DCPS contacted the mother about scheduling a meeting. There has been no denial of faith here. I mean, these aren't facts that we're debating about. These are facts that we're agreeing on.

So I guess DCPS' argument is that if these are facts that we are agreeing on, it's clear that there has been no denial of faith in this matter.

HEARING OFFICER JONES: All right. What's your response, counsel?

MS. PRIMES: First of all, the complaint doesn't merely say failure to register. What the complaint says is that they failed to register him or otherwise begin planning for his fall admission because they were made aware that he was coming.

He had at that moment the legal right, had the parents chosen to interrupt his school year, to leave Montgomery County

and begin going to DCPS immediately because the family had bought a home in the District of Columbia and his father was already living there.

They chose, and I think prudently, to let him finish out the school year, but they could have done it the other way.

HEARING OFFICER JONES:   But you understand that by --

MS. PRIMES:   No, I understand.   I understand.

HEARING OFFICER JONES:    -- them indicating to the District that they were going to allow the student to continue in Montgomery County for the remainder of the 2004-2005 school year, that means that they're in essence saying that we will start in the fall.

And as I understand what you're saying, the student's parents did come to DCPS in August during, I guess, the open

registration period.

MS. STAFFORD: Right.

HEARING OFFICER JONES: And registered the student and then provided the IAP.

MS. STAFFORD: Actually no.

HEARING OFFICER JONES: They didn't provide the IAP?

MS. STAFFORD: They had the IAP months earlier. Let me fill in. The full chronology, of course, is not in the complaint because the complaint doesn't say everything.

HEARING OFFICER JONES: But here is the key. Ms. Primes is suggesting that, in fact, there is a failure to state a claim that you are due relief from because there is no denial of faith for not allowing a parent to preregister the student. In essence, that's what you're saying.

MS. PRIMES: That's essentially

what I'm saying, and I'm just -- what I'm basically saying is we're looking at the four corners of this complaint, and the four issues that she lists are:    is Sebastian entitled to special education and related services from DCPS under IDEA; did DCPS timely register, assess, identify, or place Sebastian; is Kingsbury Day an appropriate placement; should DCPS fund?

So we're essentially talking about registering this student and DCPS offering this student faith, and in both of these instances, in the way of registration, the student when the parent initially came to the school was residing in Maryland.    We both are agreeing on that.

HEARING OFFICER JONES:    All right.

MS. PRIMES:    The child then put DCPS on notice that they were residing in Maryland on August 22nd.    The next day DCPS started acting and attempted to schedule a

meeting four days later, which the parent canceled, and then the attorney followed up the next day, on the 26th of August, and said, "We're sending the child to Kingsbury, but oh, continue with the process."

You can't have it both ways. Either you're going to accept DCPS' services or attempts to provide faith, or either you're going to reject them.

And she essentially rejected them when she placed the child in Kingsbury Day School, essentially giving DCPS really only four days to provide faith to this student.

MS. STAFFORD: Well, before my response, actually something was bothering me, and I finally remembered it. This motion cannot be brought at this time. A challenge to the sufficiency of the complaint under the new revision of the IDEA must be raised within I believe it's ten days or 15 days after receiving the complaint.

It's basically analogous to a motion to dismiss, failure to state a claim in federal court, and it's to allow you to amend, therefore to --

HEARING OFFICER JONES: I haven't ruled on it. I haven't ruled. I'm listening to this, but that's why I've asked for some evidence with regard to what DCPS did after the August registration, and then I can move forward and make some type of decision, whether or not I'm going to go forward on this or not.

MS. PRIMES: DCPS just received parents' motion for --

HEARING OFFICER JONES: I've ruled on --

MS. PRIMES: -- summary judgment today.

HEARING OFFICER JONES: I've told you that I'm not going to.

MS. PRIMES: Okay.

HEARING OFFICER JONES: I've reserved my ruling on both your motion to dismiss and her motion for partial summary judgment.

MS. STAFFORD: If I might, I do want to address some of the factual allegations because the picture that's being --

HEARING OFFICER JONES: Well, I don't want to argue this case between the attorneys. I want facts and evidence. This is your case-in-chief.

MS. PRIMES: Okay. Just --

HEARING OFFICER JONES: You put on your witnesses, and then I'll make a determination of what happens.

MS. PRIMES: And I'm not arguing the facts and points. I'm just simply talking about counsel's motion on this instance. The motion which I received this morning, which I briefly read over, includes

facts that were not alleged in the complaint. I just wanted to make the Hearing Officer aware of that.

There is now the added fact in her motion that DCPS didn't have an IAP at the start of the school year, which is different than what he's provided as allegations in her complaint.

There was never any allegations that DCPS failed to provide the student with an IAP at the start of the school year. Now all of a sudden she's adding that in her motion, and that's wholly inappropriate, and she should be bound by the four corners of her due process hearing request.

MS. STAFFORD: If I could read to you from the complaint, "no special education has been developed for him to date, and no appropriate educational placement has been offered."

That's the last sentence of

Paragraph 1.

HEARING OFFICER JONES:  All right.
So noted.  So noted.

HEARING OFFICER JONES:  All right.
Do you want to call --

MS. PRIMES:  Well, one of the
reasons why we had -- and I told Ms. Savit
about this -- one of the problems that we
had, that I had with having to start at nine
was that I told my witnesses one.  I had
spoken to them, and at least -- well, both of
them had meetings this morning.

So if Ms. Savit would like to
start her case, and I've spoken to her about
this, she's more than happy -- I'm more than
happy to allow her to do that, but my
witnesses will not be here until one.

HEARING OFFICER JONES:  Okay.

MS. PRIMES:  And we spoke about
this.

HEARING OFFICER JONES:  Counsel,

let me go and talk to you in the hall.

(Whereupon, a short recess was taken.)

HEARING OFFICER JONES:    Okay. We're back on the record.

Counsel and I have had a brief conference with regard to the merits of the case and, additionally, how we should proceed. At this point I have given both counsel an opportunity of some of my insights on this matter, and with that view, they had to, of course, convene and discuss this with their clients.

Having said all of that, Ms. Primes, where are you at on this, and then I'll ask parents' counsel.

MS. PRIMES:    I think there was discussion about the possibility of there being an order that there be a meeting for the student, and as I expressed outside, I was a little uncomfortable with that, given

the fact that DCPS when the child did enroll promptly responded.

However, a meeting and an order issuing that DCPS have a meeting for the student, we would not object to. However, we don't want it to be read as a settlement, and we also would like there to be in the order that there's no prevailing party status in the order, as well as, of course, a finding of (unintelligible) faith.

HEARING OFFICER JONES: All right. Having said that, what's your response?

MS. STAFFORD: My response is we are perfectly willing to allow DCPS to pick up where it says it was the last week in August and do whatever it wanted to do next. I understand the concern about prevailing party status. I think that given the record particularly of the request that DCPS continue to plan, I think that an order to that effect would give the Gills prevailing

party status, and I'll let you decide that one.

The only thing that we would like to do is we hope that DCPS can craft a program for S▮▮▮▮▮▮ that will work and that the Gills will be happy to accept. If that is not the case and there is a need for further due process proceedings, we would like to preserve all of our arguments with DCPS preserving all of its as well to argue that DCPS did not have and would not have had an appropriate program for S▮▮▮▮▮▮ on the first day of school; basically to argue for tuition reimbursement back to August 29th.

HEARING OFFICER JONES: Well, that's a hard one as far as relating back to the school year because of the acts and decisions that you made in my view did not allow DCPS the real opportunity to provide faith.

If that's a caveat or a

contingency, then that is going to be a problem.

MS. STAFFORD: If I may.

HEARING OFFICER JONES: Certainly.

MS. STAFFORD: There's been no testimony, as you've repeatedly admonished both sides.

HEARING OFFICER JONES: Right, right, right.

MS. STAFFORD: You have not heard the full story. The discussion, and I don't want to repeat it, has been at great length about what S███████ status was on April 29th, which of course was the first time Dr. Gill came in. There was a lot of other discussions and so forth about which you have not heard.

So I think that to cut off the Gills' rights based on a --

HEARING OFFICER JONES: Well, I won't cut them off based upon the order that

I thought the two of you had agreed upon because all that order is going to suggest or state is that DCPS will provide the student an opportunity to meet within an MDT IAP meeting where the appropriate officials will be at the school. Your client and educator advocate will be there, and you will make a determination of what is an appropriate placement for your student.

I mean that's the order.

MS. STAFFORD:    That's fine.    I just wouldn't want it to cut off -- I would like both sides to preserve all of their rights.

HEARING OFFICER JONES:    It would seem to me that once this hearing is completed and you go to the MDT IAP with your IAP, DCPS will have an opportunity to make a determination if Merch can implement it or if there's another appropriate school within DCPS who can implement it.

Then at that point it would seem to me if you're not satisfied, you know, you file a new complaint, and then from that point on you make whatever issues you think are important.

MS. STAFFORD:  That's all I want.

HEARING OFFICER JONES:  Okay.

MS. STAFFORD:  I don't want this disposition to be viewed as cutting off our rights to request full reimbursement, and I'm not asking DCPS to concede anything, any legal argument it might have against that.

HEARING OFFICER JONES:  Yeah.  All right.  So noted.  Thank you very much.

The hearing is adjourned.

(Whereupon, the hearing in the above-entitled matter was adjourned.)