UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| S.G., a minor, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-1317 (RMC) |
| DISTRICT OF COLUMBIA, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

S.G. is a minor child who needs special education services. He and his parents, Harwant Gill and Aleksandra Parpura-Gill (collectively, the "Gills"), lived in Montgomery County, Maryland, where he attended special education classes. The Gills then moved into the District of Columbia, where S.G. has had a difficult time receiving the special education assistance he requires. He and his parents sue "to both enforce and vacate portions of a February 1, 2006 hearing officer's determination [("HOD")] (later amended on April 27, 2006)." *See* Pls.' Mem. of P. & A. in Opp. to Defs.' Mot. to Dismiss the Complaint ("Pls.' Mem.") [Dkt. #11] at 1. Defendants, the District of Columbia and former D.C. Public Schools ("DCPS") Superintendent Clifford B. Janey, have moved to dismiss the complaint, asserting that the Court lacks jurisdiction. *See* Defs.' Mot. to Dismiss the Complaint ("Defs.' Mem.") [Dkt. #9]. Having carefully considered the parties' briefs and the two hearing officer decisions at issue, the Court agrees with Defendants in part and will dismiss the Complaint in part without prejudice.

## I. BACKGROUND FACTS

S.G. is a disabled student who for many years received special education and related services in Montgomery County Public Schools ("MCPS"). *See* Pls.' Mem. at 2. The Gills purchased a home in D.C. in early 2005, and Dr. Gill moved immediately into the District of Columbia. *Id.* Dr. Parpura-Gill and S.G. remained in Montgomery County until the end of the 2004-2005 school year to avoid disrupting S.G.'s education. *Id.* They approached DCPS in April 2005 to begin discussions for an Individualized Education Plan ("IEP") for S.G., so that a smooth transition could be achieved. *Id.* Under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), every special education student must start the school year with an IEP, which is deemed appropriate if it charts a course capable of delivering a free appropriate public education ("FAPE") for that student. *See* 20 U.S.C. § 1414(d); *see also* 20 U.S.C. § 1414(d)(2)(C)(i)(II) (noting that under the IDEA, a student with an IEP who tranfers to a school district in another state is entitled to receive a FAPE comparable to that set forth in the IEP he brings with him until the new local agency makes any changes that are deemed appropriate).

The Gills were rebuffed by Murch Elementary School, their neighborhood school, and told that registration for the 2005-2006 school year would not occur until August 2005. Pls.' Mem. at 3. Repeated visits and calls to Murch Elementary on May 3, 2005, May 20, 2005, June 8, 2005, and June 10, 2005, were unavailing. Compl. ¶ 16. On a May 20, 2005, visit to Murch, Dr. Parpura-Gill spoke with the principal of the school and gave her a copy of the MCPS IEP for S.G.; the principal said that she did not know DCPS's policy on transfers of students with IEPs from other jurisdictions but she would obtain guidance from DCPS Headquarters and contact the Gills. Compl.

¶ 17. That contact never occurred.[1] *Id.*

The Gills returned in August and registered S.G. at Murch on August 22, 2005, again providing a copy of his IEP.[2] Pls.' Mem. at 3. S.G. was placed in a regular education class with no special education services. *Id.* DCPS then informally invited the Gills to attend an IEP planning meeting for S.G. on August 26, 2005. The Gills were unable to gather all of the necessary professionals needed for the meeting on such short notice and asked for a postponement to September 2. Compl. ¶ 22.

> On August 26, 2005, the Gills' counsel wrote to Murch to inform them that it appeared that DCPS's many delays and missteps in processing S.G.'s admission meant that it could not offer him a free appropriate public education at the start of school, as it was legally required to do. The Gills therefore notified Murch that S.G. would remain at Kingsbury, but that they still wanted DCPS to provide special education for him and to be involved in developing his program. They therefore asked Murch to reschedule the IEP meeting, with adequate notice.
>
> Murch's principal responded to the August 26, 2005 letter with a voice mail message on September 5, 2005 – Labor Day – saying that she wished to discuss the issues in that letter. Despite three follow-up telephone calls to the principal, no further discussions took place. Instead, on September 20, 2005 she informed counsel that the matter had been turned over to DCPS's Office of the General Counsel, which would be handling the matter. The principal

---

[1] The Gills enrolled S.G. in the summer program at The Kingsbury Day School, a private special education school in D.C., because he did not have a public summer school option. Pls.' Mem. at 3.

[2] DCPS appears uncertain as to whether S.G. was registered at Murch in August 2005. The Court accepts the facts in the complaint as true for purposes of a motion to dismiss. *See Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002)); *see also Lipsman v. Secretary of Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

>expressed surprise that there had been no follow-up, and said she would call the Office of the General Counsel about S.G. There was no further communication from DCPS to discuss S.G. or to develop a program for him. Instead, without notice to the Gills, DCPS removed S.G. from the ranks of enrolled students because he did not appear for classes at Murch.

Compl. ¶¶ 24, 26. On October 25, 2005, the Gills requested an administrative hearing to challenge DCPS's failure to provide a FAPE for S.G. commencing with the start of the 2005-2006 school year. Compl. ¶ 27. The Gills asked for an order directing DCPS to begin the process of determining S.G.'s eligibility for special education immediately, to develop an IEP for him, to propose an appropriate placement, and to fund his education at Kingsbury until a legally permissible change occurred. *Id.*

When the parties convened for the hearing on January 26, 2006, DCPS had no witnesses and could not proceed. Compl. ¶ 29. The hearing officer brokered a settlement whereby DCPS agreed to commence the process of evaluating S.G., developing an IEP and proposing a placement, while he remained at Kingsbury. The Gills specifically reserved the right to seek reimbursement for S.G.'s Kingsbury tuition and related services. Compl. ¶ 30. The Hearing Officer Decision ("HOD") that issued on February 1, 2006, summarized the relevant evidence:

>This case involves allegations by parent's counsel that the District of Columbia Public Schools (hereinafter "DCPS") failed to provide a f[r]ee appropriate public education. According to parent's counsel, the parent's [sic] acquired a new residence in the District of Columbia. However, the parents decided to allow the student to complete the 2004-2005 school years [sic] in the Montgomery county [sic] school system, as the decision was made not to interrupt the student's educational year. The parent [sic] did seek to register the student early[,] on or around March 2005[,] in order to allow DCPS to determine an appropriate placement.

> It is alleged that early registration was not allowed. The parent's [sic] were allowed to register the student in August 2005, but the student remained enrolled at Kingsbury at the beginning of the 2005-2006 school years [sic], as the student attended ESY [sic] at Kingsbury. The parents alleged, through their counsel, that DCPS failure [sic] to allow early registration constitute[d] a denial of a free appropriate public education (FAPE). DCPS alleges the student parent's [sic] decided to place the petitioner within a private school, as DCPS did not refuse to develop an appropriate educational program for S.G. Additionally, DCPS alleged that the petitioner was never registered as a non-attending student.

Compl. Ex. A, February 1, 2006 HOD, at 4. The HOD ordered that "Petitioner's request for relief is GRANTED, as the parties have agreed to terms" and that "Petitioner is not the prevailing party." *Id.* at 5. It also included the terms of settlement to which the parties had agreed: DCPS would convene a Multi-Disciplinary Team/IEP meeting to review S.G.'s evaluations, develop an IEP, and determine an appropriate placement within 30 days; and, within five days of the MDT/IEP meeting, issue a prior notice of placement to a public school, or, within thirty days, issue a prior notice of placement to a private school. *Id.*

An Amended HOD was issued on April 27, 2006, upon the Gills' request for clarification. Compl. ¶ 32. Their concern was that "the hearing officer ruled that the Gills were not prevailing parties [and] [t]he order was silent as to the Gills' reservation of their rights with respect to retroactive funding" for Kingsbury. Compl. ¶ 31. The evidence summary in the first paragraph of the Amended HOD was virtually identical to the first. A second paragraph was added:

> At the commencement of the hearing, counsel for the respondent entered a motion to dismiss this matter, alleging that the petitioner had not been registered at DCPS. The motion to dismiss was not granted. Counsel for the petitioner requested that the record reflect that all of

>petitioner's rights be reserved with respect to future claims of relief in light of the fact that there was a settlement component to the order. The Hearing Officer noted that request in the record, but there was no determination made that DCPS had violated any of the petitioner's right [sic] at the hearing, as there was no denial of a free appropriate public education (FAPE).

Compl. Ex. B April 27, 2006 Am. HOD at 3. Reflecting the settlement achieved, the Amended HOD concluded that "Petitioner's counsel entered into a settlement agreement" and "Petitioner is not the prevailing party in this matter." *Id.* at 4. The orders to DCPS to evaluate S.G., develop an IEP, and determine an appropriate placement were repeated, with the same deadlines. *Id.*

DCPS finally concluded the re-evaluation of S.G. 30 days after the Amended HOD and, on May 12, 2006, directed that S.G. be enrolled at Prospect Learning Center, a full-time public special education school. *See* Pls.' Mem. at 6. The Gills were skeptical about Prospect's appropriateness for S.G. and had urged that he be placed at Kingsbury. *Id.*

The Gills explain that they would have challenged the disputed IEP decisions and requested an administrative hearing, *see* 20 U.S.C. § 1415(f), but for "the effect of the hearing officer's unsupported factual findings, his conclusions that DCPS did not fail to provide a FAPE for S.G. and that he had not been properly registered with DCPS when school started in fall 2005, and as well as the hearing officer's failure to memorialize all aspects of the settlement reached on January 26, 2006." Pls.' Mem. at 6. The Gills assert that they have exhausted all available administrative remedies because the Amended HOD unduly restricts the issues that could be presented at a hearing to challenge the IEP. Compl. ¶ 39. Therefore, they first filed this lawsuit.

Counts 1 and 2 of the Complaint seek declaratory judgment and injunctive relief. Count 1 recites that IDEA requires DCPS to establish procedures to identify special education

students, to have an IEP in effect at the start of the school year, and to provide services comparable to those in a previous IEP for a transferring student with disabilities until such time as it develops an appropriate new IEP. Compl. ¶¶ 40-43. It alleges that DCPS does not have policies or procedures that are reasonably calculated to fulfill these legal obligations. More particularly, because DCPS will not allow a student to register or enroll early, its policies do not allow sufficient time for an effective transition, "virtually guaranteeing that the student will not receive a free appropriate public education at the start of the school year." *Id.* ¶ 44. In Count 2, the Gills "request issuance of an injunction directing DCPS to reform its registration, admission and enrollment practices to prevent [IDEA] violations such as those which occurred in S.G.'s case." *Id.* ¶¶ 47-49.

Count 3 alleges that DCPS failed to comply with the hearing officer's determinations in the HOD and seeks an order that DCPS has not provided a FAPE to S.G., that Kingsbury is the appropriate placement, and that the Gills should be reimbursed for tuition and costs. *Id*. ¶¶ 52-55. Count 4 appeals portions of the Amended HOD, to the extent that it ruled that the Gills did not prevail and barred the Gills from seeking further relief for the costs at Kingsbury. *Id*. ¶ 57.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

The Defendants move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Defs.' Mot. to Dismiss the Compl. at 1. Under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, a plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191,

195 (D.D.C. 2002). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

### B. Standard of Review of Administrative Decisions Under IDEA

In reviewing administrative decisions under the IDEA, the courts will review the administrative record, hear additional evidence upon the request of the parties, and thereafter make a decision based on the preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(B). The court has broad discretion to grant appropriate relief under IDEA, *see Sch. Comm. of Burlington v. Mass. Dept. of Educ.*, 471 U.S. 359, 369 (1985), and the standard of review under the IDEA is less deferential than the traditional "substantial evidence" test used in federal administrative review cases. *See e.g. Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *Kroot v. Dist. of Columbia.*, 800 F. Supp. 976, 981 (D.D.C. 1992). However, the court should not "substitute its own notions of sound educational policy for those of the school authorities." *Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). The court must give "due weight" to the administrative decision, but its decision ultimately should be an "independent [one] based on a preponderance of the evidence." *Id.* at 206-07.

### III. ANALYSIS

The question presented by the motion to dismiss is whether the Court has jurisdiction over any of the Gills' claims. DCPS argues that any challenges to the May 2006 IEP and placement decision are premature because the Gills have failed to exhaust their administrative remedies.

Secondly, DCPS argues that nothing in the HOD or the Amended HOD limits the Gills from arguing to a hearing officer that they should be reimbursed for private school tuition for the 2005-2006 school year. That claim is, allegedly, premature and also fails. DCPS does not address Counts 1 and 2 of the Complaint.

### A. Complaint Arising from the May 2006 IEP

The Gills complain that the May 2006 IEP was based on incomplete documentation and placed S.G. in an inappropriate school. They acknowledge, *sub silentio*, that these complaints must be taken in the first instance through an administrative due process hearing. *See* IDEA, 20 U.S.C. § 1415(b)(6)(A); 34 C.F.R. §§ 300.507-512; 5 D.C.M.R. § 3029-3031. A hearing officer's decision is the final administrative decision which may then be appealed to district court. *See* 20 U.S.C. 1415(i)(2)(A); 34 C.F.R. § 300.514; 5 D.C.M.R. § 3031.5. "For almost as long as we have had administrative agencies, it has been a tenet of law that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Cummings v. Dist. of Columbia*, No. 04-1427, 2005 WL 3276308, slip op. at *4 (D.D.C., Sept. 7, 2005) (*quoting Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). It is conceded that the Gills have not filed any administrative challenge to the May 2006 IEP or the placement at the Prospect Learning Center. As a result, the Court is without jurisdiction to consider those claims with regard to the IEP.

The Gills recognize the legal process and make a faint attempt to argue futility. In some circumstances, it is not necessary to exhaust administrative remedies when doing so would be a futile act. *See e.g. McCarthy v. Madigan*, 503 U.S. 140, 146 (1992); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986); *see also Ross v. United States*, 460 F. Supp. 2d

139, 147 (D.D.C. 2006). It is not clear that it would be futile for the Gills to challenge the 2006 IEP and placement, as described more fully below.

### B. Complaint Arising from 2006 HOD and Amended HOD

The Gills advance two claims associated with the HOD and Amended HOD. First, they complain that DCPS violated the terms of their settlement, reflected in the HOD, by not evaluating S.G. within 30 days and designating a placement within five days thereafter. Second, they complain that the hearing officer erred in the Amended HOD by finding that they were not prevailing parties and by finding, without an evidentiary record, that DCPS had not failed to provide a FAPE to S.G.

DCPS responds that the Gills' timeliness complaint is "disingenuous." Defs.' Reply at 5 n.2. Without citing any authority, DCPS asserts that the implementation of the HOD "was interdicted and tolled by the Plaintiffs' March 20, 2006 request for 'clarification,'" and, if it were not, the Complaint as to the HOD is untimely. *Id.* The Court finds DCPS somewhat "disingenuous" in thinking that it can enter into a settlement and then ignore its terms altogether. But this issue need not be resolved because the Gills do not seek a remedy for this tardy action at this time. They continue to be concerned about language in the Amended HOD which may limit their ability to claim reimbursement for Kingsbury tuition for the 2005-2006 school year.

Looking specifically at that question, the Court first notes that DCPS has affirmatively stated that "there is no basis" for the Gills' concerns. Defs.' Mem. at 8. DCPS acknowledges that "the Plaintiffs, having reached a settlement, presented no evidence [before the hearing officer] on which any finding or conclusion could have been based." *Id.* Therefore, according to DCPS, "the Plaintiffs are able to raise such matters in the statutory administrative

process to consider such matters." *Id.* Since this is the representation that DCPS has made, through its counsel who are officers of the Court, it is binding on DCPS – even through other counsel – in the administrative proceedings if the Gills initiate any. *See Trout v. Garrett*, 780 F. Supp. 1396 (D.D.C. 1991).

As a point of law, DCPS also argues that the Gills were not "aggrieved by the findings and decision made" by the hearing officer and therefore have no standing to complain about his extraneous comments. *See* 20 U.S.C. § 1415(i)(2)(A) (limiting appeal rights to aggrieved parties). Stated otherwise, "[a] party may not appeal from a judgment or decree in his favor . . . ." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333-34 (1980). Because the hearing officer declared that there had been no denial of a FAPE to S.G. only in his summary of the evidence, and not in his "decision[], judgment[], order[] [or] decree[]," *Collins v. District of Columbia*, No. 02-1344, slip op. at *6 (D.D.C. March 19, 2003), DCPS argues that it is beyond review by this Court. Defs.' Reply at 6. The Court thinks not.

"Disingenuous," to borrow a word, is the Amended HOD's attempt to hide a legal finding within the so-called summary of the relevant evidence and thereby insulate it from review. The emphasized portion of the statement "there was no determination made that DCPS had violated any of the petitioner's right [sic] at the hearing, *as there was no denial of a free appropriate public education (FAPE)*," Compl. Ex. B April 27, 2006 Am. HOD at 3 (emphasis added), has no support in the record and is vacated. The hearing officer had no authority to reach such a legal conclusion because no evidence was presented. Certainly, when DCPS had no witnesses and was unable to continue with the scheduled hearing it would be totally anomalous to allow a post-hearing letter from DCPS to alter the landscape so dramatically. *Id.* at 2 ("The Hearing Officer requested verification

on this issue of registration and the record remained open for one week. In response to this request, DCPS submitted a letter dated January 30, 1996."). According to the Amended HOD, S.G. "was not enrolled as a non-attending student at the Shaw Care Center, which is the designated site of the Superintendent." *Id.* at 4. While this statement may be accurate, there is no indication that anyone at Murch or the Office of the DCPS General Counsel – or anyone else – informed the Gills that such registration at Shaw Care Center was required. There is no doubt that, if the Complaint's allegations are true, DCPS totally dropped the ball on S.G.'s registration in the DCPS system. The blame for that failure cannot be laid at the feet of the Gills. To the extent that the Amended HOD appears to do so, it is arbitrary, capricious, and without record support.

        DCPS argues that the Court cannot reach the terms of the Amended HOD because the Gills were granted the relief "both parties had agreed to and sought," so that challenges to other portions of the decision are inappropriate. Defs.' Reply at 7. Good argument; inapplicable here. According to the Complaint, the parties' oral settlement explicitly provided for the Gills to retain their rights to assert a claim for costs at Kingsbury. Compl. ¶ 30. For purposes of the motion to dismiss, this statement must be treated as true. *See Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). This aspect of the settlement was not, however, reflected in the HOD or the Amended HOD. To this extent, at least, the Gills did not receive all the relief to which both parties had agreed and they are aggrieved by the HOD and Amended HOD.

        Nonetheless, the Gills were not "prevailing parties" in the administrative process below. A settlement agreement that does not lead to a court order that changes the relationship of the parties does not result in prevailing-party status. *See Buckhannon Bd. & Care Home, Inc. v. West*

*Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001); *see also Doe v. Boston Public Schools*, 358 F.3d 20, 26 (1st Cir. 2004) (under *Buckhannon*, "IDEA plaintiffs who achieve their desired result via private settlement may not, in the absence of judicial imprimatur, be considered 'prevailing parties'"); *Armstrong v. Vance*, 328 F. Supp. 2d 50, 56-59 (D.D.C. 2004).

### C. Complaints Based on DCPS Policies for Transferring Students

Counts 1 and 2 raised over-arching complaints about the entire process – or lack thereof – at DCPS to provide a timely IEP to incoming students. Compl. ¶¶ 40-50. DCPS has totally ignored these two Counts. Nonetheless, the Court cannot treat them as conceded unless it has jurisdiction to consider them. Jurisdiction may be raised *sua sponte* as the Court has an obligation to avoid decisions over which it does not have jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) ("federal courts are under an independent obligation to examine their jurisdiction" regardless of whether any party has raised the issue).

The Complaint bases jurisdiction on 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331. Parents who are "aggrieved by" a hearing officer's decision may bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2). As stated before, the Gills were "aggrieved" by the hearing officer's decision inasmuch as the Amended HOD suggested that *"there was no denial of a free appropriate public education (FAPE),"* Compl. Ex. B April 27, 2006 Am. HOD at 3. Under the IDEA, "[a]t the beginning of each school year, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program … ." 20 U.S.C. § 1414(d)(2). And when a child like S.G.,

> who enrolls in a new school, and who had an IEP that was in effect

> in another State, the local education agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local education agency conducts an evaluation pursuant to subsection (a)(1)...if determined to be necessary by such agency, and develops a new IEP, if appropriate, that is consistent with Federal and State law.

20 U.S.C. § 1414(d)(2)(C)(i)(II). The Plaintiffs request entry of a judgment declaring that the referenced DCPS policies and practices violate the IDEA insofar as they regulate the admission of students who transfer school districts in situations like S.G.'s. *See* Compl. ¶¶ 45-46. Although the Defendants failed to respond to Count 1 it must be dismissed because the IDEA does not provide for declaratory relief. *See Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 32 (D.D.C. 2004) (denying plaintiffs' request for a declaratory judgment because IDEA does not provide for declaratory relief). Count 1 must be dismissed for failure to state a claim upon which relief may be granted.

Count 2 alleges that DCPS has "fail[ed] to adopt policies or procedures to identify and provide special education for disabled students who transfer from other school districts" which in turn "causes DCPS to violate the IDEA and to default in its obligations to those students." Compl ¶ 48. Plaintiffs request "issuance of an injunction directing DCPS to reform its registration, admission and enrollment practices to prevent IDEA violations such as those which occurred in S.G.'s case." Compl. ¶ 50. The IDEA imposes on public schools a duty to "identify, locate, and evaluate" students with disabilities (the "Child Find" duty). 20 U.S.C. § 1412(a)(3)(A). This duty requires that DCPS take steps to ensure that children with disabilities in the District of Columbia are identified and given the opportunity to receive special education and related services. Also, as part

of their Child Find duty, Defendants must (1) have adequate Child Find "policies and procedures" in place to identify, locate and evaluate children with disabilities, 34 C.F.R. § 300.125(a); (2) conduct comprehensive evaluations to test for disabilities, 20 U.S.C. § 1414; 34 C.F.R. §§ 300.530-300.536; (3) determine eligibility for special education and related services upon completion of those evaluations, *id.*; and (4) develop an IEP and an appropriate educational placement for those children ultimately found eligible for services, 20 U.S.C. § 1412(a)(4); 34 C.F.R. §§ 300.340-300.350. This process must occur within the time frames and in accordance with the standards pertaining to referrals, evaluations, eligibility determinations, IEPs and placements set forth in the IDEA and District of Columbia law. *See D.L. v. Dist. of Columbia*, 237 F.R.D. 319, 320 (D.D.C. 2006).

By raising the issue of reimbursement for the Kingsbury education, challenging the appropriateness of the 2006 IEP as well as the eventual placement of S.G., the Gills have thereby challenged the policies and procedures DCPS uses to evaluate students transferring in from other jurisdictions. This argument was not developed in the factual record in light of the settlement, and as such, the hearing officer's decision and amended decision do not reflect that this issue was considered. As the Defendants point out, "there is nothing in the Decisions that would bar inclusion of such a claim in an administrative complaint directed to the IEP or placement." *See* Defs. Reply at 4. If the Court takes Plaintiffs' allegations as true, DCPS has very serious issues to address with respect to identifying disabled students transferring into this jurisdiction, but that is an argument better addressed through future administrative proceedings. Count 2 must be dismissed because the Court is without jurisdiction on the claim at this time.

## IV. CONCLUSION

The Court will grant the motion to dismiss in part and deny it in part. The motion

will be granted as to Counts 1, 2, and 3, without prejudice, and denied as to Count 4. The administrative decision is vacated to the extent that it asserts S.G. was not denied a FAPE, and to the extent that this finding could be interpreted as a bar to the Gills' pursuit of reimbursement of the costs associated with S.G.'s Kingsbury placement for the entire 2005-06 school year. The hearing officer's April 27, 2006, decision was reached without hearing evidence and made without affording the Gills an opportunity to present their legal arguments. The Gills must now bring these claims in the context of an administrative challenge. This case will be remanded for further administrative proceedings consistent with the record and the Court's rulings. A memorializing order accompanies this Memorandum Opinion.

                                                                          _____/s/_____
                                                                         ROSEMARY M. COLLYER
                                                                         United States District Judge

DATE: August 8, 2007