*Exhibit 1*

# United States District Court
# for the District of Columbia

| |
|---|
| **S.G., a minor,** *et al.,* |
| **Plaintiffs** |
| v. |
| **THE DISTRICT OF COLUMBIA,** *et al.,* |
| **Defendant**s |

Civil Action No. 06-01317 (RMC)

### AFFIDAVIT

State of Maryland      )
                       )   ss:
County of Montgomery   )

Diana M. Savit, being first duly sworn, deposes and states as follows:

1. I am an attorney admitted to practice in Maryland and the District of Columbia, as well as in numerous federal courts, including the United States District Court for the District of Columbia. I have represented plaintiffs S.G., Harwant Gill and Aleksandra Parpura-Gill since they first requested special education for S.G. from the District of Columbia Public Schools.

2. I am over 18 years old and suffer from no legal disability that would prevent me from giving testimony. All statements contained in this affidavit are made upon my personal knowledge, are derived from information in the record, or are derived from information which I maintain in the ordinary course of my business.

3. As indicated in my resume, a copy of which is attached as Exhibit 1A, I have practiced law for over 30 years, 28 of them as a civil litigator. I have brought and defended a variety

of civil cases, in both the public and private sectors. Over the years my practice has evolved; since approximately 1994, I have specialized in three substantive areas: commercial litigation, civil rights and discrimination cases, and special education. Cases in two of these areas—civil rights/discrimination and special education—usually are brought under fee-shifting statutes; *i.e.,* a prevailing plaintiff is entitled to recover his/her attorney's fees and costs from the defendant. As a result, I have substantial experience not only with general civil litigation, but also with fee petitions. I estimate that I have applied to courts and administrative agencies for fees at least 60 times, on behalf of parties who prevailed on the merits as well as for other types of fee awards, such as discovery sanctions. Only one of my fee requests has ever been denied. That denial was not on the merits, but was due to the effect of the restrictions upon special education fee payments (in cases brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.*) contained in the FY 2002 District of Columbia appropriations act; indeed, the District of Columbia conceded both the appropriateness of my hourly rate and the number of hours worked even while opposing that motion on the grounds that it could not legally pay, because of the fee cap, the full amount requested. Only a handful of the fee requests I have submitted over the years have been reduced and of those, most of the reductions have been adjustments for computational errors on my part rather than the products of substantive disagreement with either the hours I worked or the hourly rates claimed.

      4.      I stay current regarding developments in the law governing reasonable attorney's fees through professional reading, attending courses, consultations with other lawyers, reading the fee requests of other lawyers with similar practices, and reading reported decisions regarding awards in fee-shifting cases. For the 22 years I have been in private practice, I have always followed the same method in selecting my rate: I ascertain the range of rates charged by lawyers of my experience, and then I select a rate toward the mid-point of the scale. I do this as a matter of business judgment, to

establish a competitive position in the marketplace, and because the small firms in which I have practiced have kept their overhead low, creating less need to charge clients high rates in order to recover the costs of operating the business. I followed this procedure in establishing the $325 hourly rate I currently charge, as well as the $295 rate I was charging when the Gills first retained me. The $325 per hour rate, which has been in effect since January 1, 2006, is charged to and paid by all clients who do not have special arrangements, thus establishing the market rate for our firm's services.

5.  All of the fee petitions that I have submitted to courts and administrative agencies have sought fees at my then-current hourly rates. In the vast majority of my fee requests, my adversaries have conceded the appropriateness of my then-current rate without question. Indeed, over the past 22 years whether my hourly rate was proper has been questioned only five times and in four cases, the matter was resolved in my favor. In 1988, in an action brought before the Superior Court of the District of Columbia under the federal Magnuson-Moss Act, Associate Judge Paul R. Webber, III (later the presiding judge in the Superior Court's Civil Division) initially reduced my hourly rate to the lower one charged by my opposing counsel, but later reversed himself and ruled that my hourly rate represented fair compensation. In 1989, I successfully sought sanctions pursuant to Sup. Ct. Civ. R. 11 and received fees at my then-current hourly rates on an order entered by Superior Court Associate Judge Franklin Burgess, despite a claim by opposing counsel that my rate was too high. In connection with a request for discovery-related attorney's fees in *Mary Ann White v. United States Catholic Conference,* Civil Action No. 97-1253 (TAF)(JMF), my rate was challenged, but unsuccessfully. In a memorandum opinion filed March 31, 1999, Magistrate Judge John M. Facciola specifically found that my 1998-99 hourly rate of $225 was not excessive, and noted that given my experience, I could have claimed an hourly rate as high as $330 under the version of the Court's *Laffey* matrix in effect at that time. Most recently, in *Marthine Mason, et al.*

*v. Board of Education of Prince George's County,* Case No. CAL 02-25638, Judge Thomas Smith of the Circuit Court of Maryland for Prince George's County approved (over strenuous objection by the defense) my $295-per-hour rate (for work performed in 2004) as consistent with the market for my services. His memorandum opinion issued on May 23, 2005.

6.   My hourly rate was challenged only one other time, in *Karen Young, et al. v. Federal Express Corporation, et al.,* Civil Action No. 202413, a case filed in the Circuit Court of Maryland for Montgomery County. The court never decided the question because the case settled on appeal as to all issues, including the attorney's fee claim, before the trial court could rule on the fee motion.

7.   My hourly rates have also been specifically approved in fee awards made by the United States District Court for the District of Columbia in *Andrew Beale, et al. v. District of Columbia, et al.,* Civil Action No. 97-00974 (CKK) (the Court entered five separate fee awards in that case, three for discovery sanctions and two for work on the merits); *Paul D. Pearlstein, et al. v. District of Columbia, et al.,* Civil Action No. 98-01877 (GK); *Thomas and Jean Zearley, et al. v. Arlene Ackerman,* Civil Action No. 98-2146 (RCL); *Jamel Whatley, et al. v. District of Columbia, et al.,* Civil Action No. 98-02961 (PLF)(JMF); and *Evan Fisher, et al. v. Clifford B. Janey, et al.,* Civil Action No. 05-738 (EGS)(JMF). In the *Whatley* case, the Court entered four separate fee awards, three for discovery sanctions and one pursuant to a settlement. Most recently, in two separate orders entered on, respectively, May 10, 2007 and July 20, 2007, the Superior Court of the District of Columbia (Eilperin, J.) awarded me fees at my 2007 rate in *Debra A. Schwartz v. John G. Bickerman,* Misc. No. 00835-07.

8.   The hourly rates charged in this case are, based upon my knowledge and experience, well within the metropolitan Washington, D.C. market rate for professionals of my experience and

are below the rates for professionals at my level of experience found on the *Laffey* matrix maintained by the office of the United States Attorney for the District of Columbia. The current *Laffey* matrix can be found at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_3.html.

9. My firm followed its standard timekeeping practices in this matter, meaning that I kept contemporaneous record of my time by recording my efforts daily in Timeslips™, the time and billing program that we use. Expenses charged to our firm by outside vendors are recorded by me or by our legal assistant, Ellen Pressman, when bills are received or at the end of the month (for expenses charged by our landlord, such as postage and photocopying, which are billed monthly with our rent).

10. Our firm typically bills in increments of .1 hour. This reduces the overall fees charged to our clients by minimizing the "rounding up" effect created by billing in larger increments of one-fourth or one-half hour. To make up for the potential overbilling that even this practice can engender if a task takes only a minute or two, I tend to group multiple tasks together in a single entry if I do several short projects in a single day, such as brief letters and telephone calls.

11. In addition to *pro bono* legal work, for which of course no fee is charged, I typically charge clients a reduced hourly rate in the following circumstances: (a) Friends and members of the families of persons affiliated with my law firm receive a 20% discount from the hourly rate otherwise in effect at the time I am retained; (b) when the facts and nature of the case make it appropriate, I enter into a fully or partially contingent fee arrangement; and (c) if my hourly rate increases before a matter for which I originally was retained at a lower rate concludes, I maintain the original rate until I complete that representation. In all such cases, if my clients have the opportunity to ask their adversaries to pay their legal fees, the request is made at my current market

rate, consistent with the rule established in *Laffey v. Northwest Airlines, Inc.*, 746 F.2$^d$ 4 (D.C. Cir. 1984).

12.     When the Gills first engaged my services, my hourly rate was $295. As a courtesy to them, and consistent with the practice described in ¶11, I maintained that rate when my billing rate increased to $325 on January 1, 2006. As a additional courtesy to them, when we received the hearing officer's determination and amended hearing officer's determination that were at issue in this matter, I further reduced my non-contingent rate to them to $236 per hour, with the understanding that if we succeeded in our efforts to overturn the adverse portions of the determinations and were awarded attorney's fees, I would seek those fees at my full rate and they would make up the difference between the discounted rate and my regular one. I did this because the Gills had already incurred substantial legal fees, and were concerned about the additional cost of challenging the hearing officer's erroneous ruling. I entered into a partial contingent fee arrangement with them to share the risk of going forward in order to achieve a better result for S.G.

13.     I have examined my firm's billing records and have determined that a total of 20.45 hours were expended on all tasks related to the case before this Court. Of these, 5.7 hours were not charged to the Gills, making the total value of the billed time $4,793.75 (14.75 x $325). Copies of my firm's statements for this work, redacted to remove time and billing entries unrelated to the district court case, are attached as Exhibit 1B.

14.     In addition to the billed time, I spent time in August reviewing the Court's memorandum opinion and order and advising my clients about the decision, and of course I have expended time in preparing this motion and its accompanying documents. This charges have not yet been billed to the Gills.

15. Our firm's records also reflect that the following expenses, all reflected on Exhibit 1D, were incurred in connection with this case:

| | |
|---|---|
| New case filing fee | $350.00 |
| Couriers | 90.00 |
| Postage | 13.23 |
| Photocopying | <u>12.20</u> |
| **Total** | **$465.43** |

We pass through all expenses to our clients at their cost to us. We do not mark up expenses.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true and correct.

/s/    *Diana M. Savit*

Diana M. Savit

Executed on:    August 22, 2007