# United States District Court
# for the District of Columbia

<table>
<tr><td>

**S.G., a minor, *et al.*,**

       **Plaintiffs**

   **v.**

**THE DISTRICT OF COLUMBIA, *et al.*,**

     **Defendants**

</td><td>

**Civil Action No. 06-01317 (RMC)**

</td></tr>
</table>

## PLAINTIFFS' RENEWED MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Plaintiffs S.G., Harwant Gill and Aleksandra Parpura-Gill ( "plaintiffs" or "the Gills") respectfully move the Court, pursuant to Fed. R. Civ. P. 52(d)(2)(B), to enter an order awarding them $25,831.50 in legal fees and $466.03 in expenses as prevailing parties in fee-shifting litigation brought against defendants Michelle Rhee, Chancellor of the District of Columbia Public Schools[1] ("DCPS"), and the District of Columbia (collectively, "the District").

The grounds for this motion are that plaintiffs are entitled to reasonable legal fees and expenses incurred in vindicating their rights pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"), as is specifically provided by 20 U.S.C. §1415(3)(B)(i)(I). The circumstances leading up to this request are:

---

[1] At the time the Gills filed this action, Clifford B. Janey, DCPS's Superintendent, was that agency's highest officer and consequently was named as a defendant. Since then, the office of Superintendent of Schools has been abolished and a new office, Chancellor, has been created in its place. The current Chancellor is Michelle Rhee. By operation of law, she is substituted as a defendant in this case. The Court may take judicial notice of DCPS's change in administration.

1.      The Gills are a disabled student and his parents who successfully sought special education and related services for S.G. from the District of Columbia Public Schools ("DCPS") in two separate due process hearing brought pursuant to IDEA.[2]

2.      The first due process hearing, held January 1, 2006, ended with a settlement between the Gills and DCPS which the presiding hearing officer partially incorporated into a decision and an amended decision issued on, respectively, February 1, 2006 and April 27, 2006.  Because the decisions did not accurately reflect the parties' settlement and included "back door," unsupported factual findings that the Gills correctly viewed as potentially troublesome for future litigation, on July 26, 2006 the Gills filed this action to, *inter alia,* overturn the unfavorable portions of those decisions.

3.      On August 8, 2007, this Court issued a memorandum opinion and order vacating the challenged portions of hearing officer determinations and otherwise remanding the case for further administrative proceedings.

4.      On February 5, 2008, the Court issued a memorandum opinion and order amending its August 8, 2007 decision to reflect that the Gills prevailed in the due process proceedings convened on January 26, 2006.

---

[2]

Except where otherwise indicated, all facts in this motion are derived from the record before the Court and cited in its August 8, 2007 memorandum opinion, and/or from Exhibit 1 to this motion (including the attachments to that exhibit).

2

5.     Also on February 5, 2008, the Court issued an order denying the Gills' then-pending motion for attorney's fees and costs, finding the motion premature until the administrative proceedings for which the case had been remanded were over.

6.     In the interim, the parties convened on October 23-24, 2007 for the administrative due process hearing required by the Court's remand.  Following the hearing, the hearing officer issued on October 29, 2007 a determination in the Gills' favor which, *inter alia,* obligated DCPS to place and fund S.G. at The Kingsbury Day School for the 2005-06 school year and through January 2007.  *See* the parties's joint status report filed March 4, 2008 and Exhibit A thereto.  Issues concerning S.G.'s educational program, placement and funding beyond January 2007 were deferred, by the parties' agreement, for future proceedings.

7.     As the prevailing parties in two separate IDEA administrative hearings, on January 21, 2008 the Gills submitted their request for reimbursement of attorney's fees and expenses incurred in those hearings.  They sought $12,488 in fees and $151.42 in expenses for the first hearing, and $13,747.50 in fees and $610.67 in expenses for the second hearing.

8.     DCPS approved 100% of the expenses from both hearings, but only $9,930 in fees for the first hearing and $11,632.50 in fees for the second hearing.  The discrepancies appear to derive largely from DCPS's refusal to pay legal fees at counsel's documented market rate, substituting instead the $275-per-hour cap found in its October 1, 2006 administrative guidelines for payment of legal fees in special education cases.  DCPS also disallowed legal work performed for the Gills in May 2005 as "pre-hearing."

9.     Of the approved amounts, DCPS paid only $4,000 per administrative hearing, consistent with the cap on legal fees in District of Columbia special education cases imposed by the District's various appropriations acts.  The unpaid balance can be awarded only with a order from this Court, and cannot be paid absent Congressional action.  *See Calloway v. District of Columbia,* 216 F.3$^d$ 1 (D.C. Cir. 2000).

Based upon the foregoing, the Gills respectfully move the Court to enter an order awarding them full legal fees they have incurred in litigating this case, as well as litigation expenses not paid administratively because they related exclusively to proceedings before this Court.

Plaintiffs also ask the Court for leave to file a supplemental request for the fees and expenses incurred in litigating their fee request.

In support of this motion, plaintiffs respectfully refer the Court to the accompanying exhibits and memorandum of points and authorities.

/s/ *Diana M. Savit*

Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20815
(301) 951-9191
Attorneys for plaintiffs

4

# United States District Court
# for the District of Columbia

| |
|---|
| **S.G., a minor,** *et al.,* |
| **Plaintiffs** |
| **v.** |
| **THE DISTRICT OF COLUMBIA,** *et al.,* |
| **Defendants** |

**Civil Action No. 06-01317 (RMC)**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Plaintiffs S.G., Harwant Gill and Aleksandra Parpura-Gill ( "plaintiffs" or "the Gills") have prevailed in three interrelated actions brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA")–this action as well as two administrative due process hearings. Accordingly, they are entitled to recover their legal fees and expenses. 20 U.S.C. §1415(3)(B)(i)(I).

## ARGUMENT

### I.      Plaintiffs are entitled to an award of their legal fees and costs

In an action brought pursuant to IDEA, the Court, in its discretion, may award to a prevailing party who is the parent of a child with a disability reasonable attorney's fees as part of the costs to which that party is entitled. 20 U.S.C. §1415(3)(B)(i)(I). A "prevailing party" is one who achieves judicially sanctioned relief, typically a change in its favor in its adversary's behavior. *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598 (2001). Applying this standard, the Gills have prevailed, as the Court entered a judgment in their favor on two significant issues: it vacated portions of the underlying hearing officer's determination which, if left standing, could have vitiated the gains the made in their first

administrative proceeding and prevented them from obtaining complete relief in their second. The Gills separately prevailed in the administrative hearings themselves, receiving orders which directed the District of Columbia Public Schools ("DCPS") to alter its conduct toward them to their benefit.

### II.    The fees and expenses claimed are reasonable

It is the Court's responsibility to determine what fee is reasonable. *Hensley v. Eckerhart,* 461 U.S. 424 (1983). The IDEA, however, provides guidance: Fees awarded to parents and students who prevail in IDEA cases "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C). As in most cases involving statutory fee-shifting, the inquiry usually starts with a determination of the lodestar; *i.e.,* the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.; Laffey v. Northwest Airlines, Inc.,* 746 F.2$^d$ 4 (D.C. Cir. 1984). The lodestar may then be adjusted to reflect particular circumstances of the case. We respectfully submit that both the hourly rates claimed for the attorney who litigated this case, as well as the number of hours expended, are reasonable and that no downward adjustments are required. The Gills do not request an upward adjustment, although–as indicated below–they ask that the fees be awarded at their counsel's current hourly rate, rather than the discounted rate they were charged.

### A.    Hourly rates

As explained in some detail in Exhibit 1, the hourly rates requested for the lawyer who handled this matter is her current regular hourly rate, which represents the market rates for her services and which has been approved in the past by other courts. Furthermore, the rate charged in this representation is below the rate for comparable individuals reflected on the *Laffey* matrix maintained by the office of the United States Attorney for the District of Columbia. This matrix establishes presumptively reasonable rates in the District of Columbia for complicated fee-shifting

2

cases.  *See  Kister v. District of Columbia,* Civil Action No. 01-00807 (D.D.C., August 15, 2005) (RBW) (mem.).

In vetting the Gills' request for fees incurred in the administrative proceedings, however, DCPS allowed only $275 per hour, not the market rates for their lawyer's services.  The $275 rate apparently derives from DCPS's October 1, 2006 guidelines for IDEA legal fee payments, but those guidelines represent wishful thinking on DCPS's part, rather than a considered assessment of what is actually charged for special education litigation in the District of Columbia.

The only explanation for DCPS's guidelines of which we are aware is found in *Agapito v. District of Columbia,* 525 F.Supp.2[d] 150 (D.D.C. 2007), in which DCPS explained that as of the time it adopted its guidelines, it had found–through the anecdotal experience of its one fee-reviewing attorney–that attorneys with 20 or more years of special education experience seemed to charge $300 to $350 per hour for their services.  DCPS therefore determined that any billing rate over $350 per hour, irrespective of the length of the attorney's experience is excessive, unreasonable and inconsistent with the prevailing market rate in this community.  Despite this conclusion, DCPS proceeded to promulgate a guideline that presumed that the maximum hourly rate payable to special education attorneys was $275–$75 per hour less than the rate DCPS acknowledged was within the range of market rates for such attorneys.  *See Agapito v. District of Columbia, supra,* 525 F.Supp.2[d] at 153.  DCPS further claimed that a $275-per-hour maximum was appropriate for special education cases because they "are not complicated."  *Id.*

The attorneys whose fee petitions were at issue in *Agapito* did not submit their own memorandum on the appropriateness of DCPS's guidelines.  *Id.,* p. 152.  Thus, the Court did not have the benefit of hearing from the plaintiffs' bar.  We respectfully submit that DCPS's highly one-

3

sided, self-motivated evidence paints a distorted picture of special education litigation, and that for the following reasons the $275-per-hour maximum should not be followed in this case, if ever.

- As indicated above, the guideline itself makes no sense. DCPS acknowledged in *Agapito* that in 2006, when it promulgated the guideline, the market rate for District of Columbia special education attorneys was $75 per hour higher than the rate it selected.

- The DCPS attorney whose affidavit was offered to the Court to justify the $275 rate is the supervisory attorney who oversees lawyers representing DCPS in IDEA cases. She has a vested interested in minimizing attorney's fee awards to prevailing parties, as the prospect of recovering a less than fully compensable fee serves to discourage parents and students from vindicating their IDEA rights. Her statements therefore should not be accepted without question or further inquiry.

- DCPS characterized IDEA administrative hearings as uncomplicated; however, the facts DCPS cited to prove its point go to the number of hours reasonably expended, not the reasonableness of the hourly rate charged. In fact, the absence of discovery or routine pre-hearing conferences greatly complicates the lawyer's job, precisely because there is no recognized means of determining DCPS's likely evidence or arguments before the hearing begins. (This can be addressed, to some degree, by attending individualized education plan meetings for the student, but time spent at these meetings is not compensable under IDEA, even for prevailing parties. *See* 20 U.S.C. §1415(i)(3)(D)(ii).) Preparation is considerably trickier and more uncertain under these circumstances, and it takes a lawyer well-versed in special education law to navigate the administrative system. Furthermore, IDEA practice is constantly evolving; new decisions are handed down almost daily and–because this is a federal statute–a conscientious IDEA lawyer will monitor developments across the country. Expertise of this type tends to cost more.

4

• The *Agapito* decision also relied upon facts peculiar to that case; specifically, the absence of legal research, lengthy hearings or expert testimony.  None of these factors applies to the Gills' case.  They went through two hearings, offered multiple exhibits, introduced both lay and expert testimony, and took an appeal that involved novel and vigorously litigated legal issues.

As explained in Exhibit 1, the Gills have been charged different rates over the course of this representation.  Their counsel's initial $295-per-hour rate was reduced to $236 per hour when this lawsuit was filed, representing a partial contingent fee arrangement in which the contingency has since been satisfied.  Thus, the Gills have by now been charged–and paid–their attorney's initial market rate. Moreover, although the Gills actually were charged lower rates, their attorney is entitled to be compensated at her market rate during all relevant periods.  As explained in Exhibit 1, as a courtesy counsel has maintained throughout her representation of the Gills the hourly rate to which they first agreed when the representation began.  This should not translate into a windfall to an adversary who is obligated to pay attorney's fees by statute, and who chose to defend indefensible positions.  *See Laffey v. Northwest Airlines, Inc., supra* (public interest law firm which charged below-market rates entitled to fee award at market rates in fee-shifting litigation).

In light of this, the Court should approve the hourly rates charged by the Gills' counsel and should award fees at those rates.

### B.    Number of hours expended

As indicated in Exhibit 1 and its accompanying attachments, only 20.55 hours were expended on the Gills' behalf in litigating this case, of which 7.3 hours were not charged, making the total value of the fees for litigation in this Court $7,596.  We respectfully submit that this is a modest sum

for preparing a complaint, defending against a complicated motion to dismiss, and filing successful post-trial motions, therefore that it should be awarded in full.

With respect to the fees incurred in the two administrative due process proceedings, DCPS has agreed that all but 2.6 hours were proper. Given DCPS's financial incentive to discount the Gills' fee request, we submit that the Court need not inquire further as to the time with which DCPS agrees. As for the 2.6 challenged hours, DCPS described those as "pre-hearing." This misconceives the ongoing nature of legal representation. The Gills' early meetings with their attorney and exchanges of information provided important background that contributed to their attorney's ultimate knowledge of the case. Absent extenuating circumstances, no lawyer initiates litigation immediately after being retained; there is (and should be) a investigative period which bears fruit much later. This is precisely what occurred during the time period DCPS questioned. All of the hours submitted in the administrative fee request should therefore be compensated.

### C. Expenses

The Gills separately incurred $466.03 in expenses in this litigation before this Court, all of which are detailed more fully in Exhibit 1. We submit that all of these expenses were reasonable and should be paid. The Gills' administrative-level expenses have been paid by DCPS and are not claimed here.

### III. Plaintiffs are entitled to submit a supplemental petition for their remaining legal fees and expenses

This motion seeks an award of only those legal fees and expenses incurred through March 31, 2008 and billed through April 2008. Further fees and expenses will be incurred in litigating this motion. The Gills therefore request the Court's permission to file a supplemental fee petition after

6

the Court rules on this request.  *See Sierra Club v. Environmental Protection Agency,* 248 U.S.App.
D.C. 107, 769 F.2$^{\text{d}}$ 796 (1985) (court may award legal fees and expenses incurred in fee litigation).

## <u>CONCLUSION</u>

For all the foregoing reasons, plaintiffs respectfully submit that their motion for an award of legal fees and expenses should be granted, and that they should be awarded $25,831.50 in legal fees and $466.03 in expenses, payable consistent with applicable law. In addition, Court should grant plaintiffs permission to file a supplemental petition seeking the fees and expenses they have incurred in this matter but which have not been billed to date.

/s/ *Diana M. Savit*

Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20815
(301) 951-9191
dms@bowsslaw.com
Attorneys for plaintiffs

7